## JOHN TYLER v. THE STATE.

### No. 2995. Decided March 24, 1904.

**1.—Rape—Continuance—Material Testimony.**

Where the testimony of the absent witness would have corroborated that of defendant's mother to the effect that previous to the alleged rape by force, the prosecuting witness by her speech and conduct had given her consent to defendant to an act of carnal intercourse, it was material, and diligence having been shown, the continuance should have been granted.

**2.—Witness—Reputation.**

While a witness may testify to the good reputation of another, although he may never have heard that repute questioned, the same rule does not prevail in regard to bad reputation, and the witness should have heard that reputation called in question.

**3.—Same—Reputation for Chastity.**

Where the witness' reputation for chastity was called in question by

the defendant's testimony, it was competent for the State to support her reputation.

**4.—Argument of Counsel.**

Care should be taken by State's counsel to avoid any expressions, not based on the record, calculated to inflame the minds of the jury, and especially so in rape cases, and an allusion to another case of rape wherein defendant was convicted was unauthorized and improper.

**5.—Charge of the Court—Force Must Be Defined.**

Where in a trial for rape consent vel non was an issue, the court should have given a charge on the question of force and resistance required to be put forth, before a party can be convicted of rape.

Appeal from the District Court of Cherokee. Tried below before Hon. Tom C. Davis.

Appeal from a conviction of rape; penalty, seven years imprisonment in the penitentiary.

The opinion sufficiently states the case.

*B. B. Perkins,* for appellant.—On the question of general reputation: Trammell v. State, 10 Texas Crim. App., 467; Holbert v. State, 9 Texas Crim. App., 219; Griffin v. State, 26 Texas Crim. App., 157.

There being an utter absence of any statement from prosecutrix of any fear of death or serious bodily harm on account of threats used by defendant, or that she was influenced by any such threats, or in fact that any were made to get her to yield her virtue, it was error to submit that issue to the jury. Jones v. State, 20 Texas Crim. App., 665; Mooney v. State, 29 Texas Crim. App., 259; Price v. State, 36 Texas Crim. Rep., 143; Thompson v. State, 33 Texas Crim. Rep., 472; Shields v. State, 32 Texas Crim. Rep., 498.

It is error for State's counsel to state matters of fact to the jury, injurious to defendant, not in evidence. 12 Texas Crim. App., 592; 11 Texas Crim. App., 400, 401; 18 Texas Crim. App., 522, 523; 30 Texas Crim. App., 564; 23 Texas Crim. App., 261.

Intercourse without the consent of the female is not rape, unless the defendant has used that degree of force or such threats as contemplated by the statute. Rhea. v. State, 30 Texas Crim. App., 483; Jenkins v. State, 1 Texas Crim. App., 346; Price v. State, 36 Texas Crim. Rep., 143; Thompson v. State, 33 Texas Crim. Rep., 472; Shields v. State, 32 Texas Crim. Rep., 498.

*Howard Martin,* Assistant Attorney-General, for the State.—On the question of force, threats and fraud, Sharp v. State, 15 Texas Crim. App., 171.

HENDERSON, JUDGE.—Appellant was convicted of rape, and his punishment assessed at confinement in the penitentiary for a term of seven years; hence this appeal.

Appellant made a motion for continuance on account of the absence of several witnesses, for all of whom appellant appears to have used proper diligence. By the witness Emma Price appellant proposed to

prove that she was with defendant's mother on the 7th of October, 1903; that they were on their way home in a wagon and stopped at the home of Cora Mallard (prosecutrix); that defendant's mother wanted to borrow some salt, and appellant got out and went into the yard with Cora Mallard, and into the smokehouse, for the purpose of getting the salt; that the mother of defendant went after him, but returned without him; that a few minutes thereafter defendant and prosecutrix, Cora Mallard, returned and came to where they were; that prosecutrix said to defendant's mother, "Don't think anything strange by our staying so long, Mrs. Tyler; the salt was awful hard to get." To which defendant's mother replied, "You must have been doing something wrong, or else you would not be denying what you have never been accused of doing." Appellant did not deny the act of carnal intercourse with prosecutrix, but claimed he had her consent; and there were some very strong circumstances supporting this contention. On this branch of the case appellant's mother testified, and among other things she stated, that after the parties remained at the smokehouse so long, she went to hurry them up, and found prosecutrix and appellant in the smokehouse; and copulating. She returned to the wagon, and then the conversation between prosecutrix and herself when the parties came back occurred. If it be true that this act of intercourse took place, as testified to by appellant's mother, it would be a strong circumstance, tending to show that the subsequent act of carnal intercourse, which is the basis of the prosecution in this case, took place with the consent of the prosecutrix. While the absent witness Emma Price does not corroborate appellant's mother in regard to the entire transaction, yet she does corroborate her as to a part thereof; that is, what occurred at the wagon on the return of the parties; and we believe, under the circumstances, appellant was entitled to this evidence. Especially so, when we look to the record before us in order to determine as to the sufficiency of the evidence to support this conviction. Here, according to the uncontroverted testimony, the prosecutrix, who was a married woman, went in a buggy, with appellant (who was a married man living in the same neighborhood) to a festival at night, some five or six miles from prosecutrix's home. She testified that he asked her to copulate with him on the way back, about a mile from Clabe Henderson's, and she refused; that afterwards they stopped at Henderson's to get warm. This was about 3 o'clock at night. That after they left there, and had passed Price's about a quarter of a mile, and about one and a half miles from her home, he again asked her to have intercourse with him, and she declined. He then stopped the buggy and threw his legs on her lap, and said she might as well, that he was going to have it anyway. Whereupon she jumped out of the buggy, and he jumped out and caught her. She resisted and hallooed two or three times, and they wrestled around, he trying to throw her down and telling her if she hallooed any more he would kill her, and that after resisting all she

could, he threw her down and had intercourse with her; that he was a great deal stronger than she. In confirmation of this, other witnesses testified that they went to the place in the morning and saw the ground considerably torn up where she said it occurred; they found a hairpin on the ground, and some candy which appellant had given her; that at one place near the road, they found where a woman's heels had sunk in the ground pretty deep, and opposite her toes were the tracks of the toes of some other person, who evidently stood in front of her. It is further shown that she had mud on her skirt, and it was torn in one place. However, no bruise or scratches were developed in the testimony. It was further shown, that as soon as they drove up to her home, she told her husband about it, in the presence of appellant, who denied it. On appellant's part it was shown that she promised to have intercourse with him before he agreed to carry her to the festival in the buggy; that on the way she declined, because she said it would ruffle her dress. After they stopped at Henderson's to warm, on the way back, her brothers, who· had been riding along behind, passed on ahead; that when they got to the place where the alleged offense occurred, she did not want to lie down, and they agreed to copulate standing up. This not being consummated according to the satisfaction of the parties she agreed to lie down, and did so, when he copulated with her; and that he was surprised when she told her husband about it, when they got home. This is a summary of the testimony. While there is testimony both ways, the circumstances tend strongly to show a consent copulation. At any rate appellant was entitled to the benefit of every circumstance on his behalf, and among others, to the testimony of the absent witness Emma Price, as corroborative of his mother.

We believe it was competent to show the condition of the ground on the next morning where the transaction is alleged to have occurred. We are inclined to the opinion that the witnesses used by the State to impeach the reputation of appellant for truth and veracity did not show themselves sufficiently acquainted with that reputation in order to have testified. It has been held that when a witness testifies to the good repute of another, he may so testify, if he is otherwise well acquainted in the community, notwithstanding he may never have heard that repute called in question. But we do not believe the same rules prevail in regard to bad reputation; that is, we do not believe that the witness can testify to the bad reputation of another for truth and veracity, who has never heard that reputation called in question. If, as the court says, the bad reputation of Cora Mallard for chastity was called in question by the defendant's testimony, it was competent for the State to support her reputation.

Appellant also calls in question the action of the district attorney in making inflammatory remarks during the closing argument. We do not believe the remarks attributed to the district attorney were proper. It has often been held in rape cases that care should be taken

to avoid any expressions, not based on the record, calculated to inflame the minds of the jury. Richard Sessions, about whom one of the expressions was used, was a material witness for appellant; and we do not find anything in his evidence that showed he belonged to a crowd of liars and falsifiers. Nor was the district attorney authorized to say that he intended to clean out that crowd before he got out of the district attorney's office. The court says he did not hear the district attorney make use of the expression, "that in another case the verdict of the jury assessing the punishment against another party at a thousand years, had done more to protect female virtue than any verdict which had been rendered in the county for years;" and that the district attorney denied making the statement. Whether the court by this explanation undertook to disallow appellant's bill on this point is not made clear. If the judge did not intend to approve the bill, he should have directly stated that fact. If the district attorney did use the expression, it was not authorized. It occurs to us, in this connection, that the requested charge should have been given. We also believe, considering the issue of consent vel non, the court should have given a charge on the question of force and resistance required to be put forth before a party can be convicted of rape. Appellant's requested charges may not have been entirely correct, but they served to call the attention of the court to this feature of the case.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*