### JABEZ MITCHELL v. THE STATE.

#### No. 3911.   Decided February 27, 1907.

**1.—Murder in Second Degree—Character of Deceased—General Reputation.**

Where upon trial for murder the State's witness first stated that he was not acquainted with the character of deceased but could speak personally, that he had never heard it discussed; however, on further examination the witness stated that he was sufficiently advised of the general character of deceased to say what that character was as to being a peaceful quiet man or as to being a dangerous man, there was no error in permitting the witness to state such character.

**2.—Same—Argument of Counsel—Harmless Error.**

Where upon trial for murder the State's counsel stated in his argument that the State's witness after having had occasion to speak of and investigate the character of deceased, etc., yet the testimony showed that the witness felt prepared to speak as to the general reputation of the deceased, the error, if such, was harmless.

**3.—Same—Charge of Court—Murder in Second Degree—Manslaughter.**

Where upon trial for murder the evidence showed that there was no adequate cause in the case, the court correctly charged on murder in the second degree and not on manslaughter.

**4.—Same—Charge of Court—Affirmative Character of Charge—Self-Defense.**

Where upon trial for murder the evidence did not show any such circumstances of immediate and pressing danger by anything said or done by deceased which would cause the defendant to have any reasonable apprehension to his life or serious bodily injury, and that he shot down deceased in pursuance of a previously formed design, the court was not required to submit an affirmative charge on threats in connection with the theory of self-defense.

Appeal from the District Court of Bexar.   Tried below before the Hon. Edward Dwyer.

Appeal from a conviction of murder in second degree; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

The following was the charge on threats and self-defense which the defendant objected to as being negative, etc.:

"If the jury shall find from the evidence that prior to the homicide, the deceased had threatened the life of the defendant, such threats of themselves would afford no justification for the offense, unless it be shown that at the time of the killing, deceased had done, or was in the act of doing some act or was making some demonstration manifesting an intention then and there to execute or carry out such threats or which was reasonably calculated, in view of all the evidence and circumstances of the case, considered from the defendant's standpoint, to produce and did produce in the mind of the defendant the belief that the deceased was about to execute such threats, and in that event, defendant would have the right to act upon such reasonable appearances of danger, notwithstanding such danger might not in fact have been real; and if acting upon such appearances of danger, if any, defendant shot and killed the deceased, J. F. Warren, then you will find the defendant not guilty.

*C. A. Davies,* for appellant.—On the question of affirmative charge on threats in connection with self-defense: Pratt v. State, 96 S. W. Rep., 9; Mitchell v. State, id., 43; Alexander v. State, 25 Texas Crim. App., 260. On question of manslaughter: Howard v. State, 23 Texas Crim. App., 265. On question of character of deceased and his general reputation as a peaceable man: Holsey v. State, 24 Texas Crim. App., 42; Roach v. State, 41 Texas, 261.

*F. J. McCord,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at twenty years confinement in the penitentiary; and comes to this court on appeal.

The circumstances summarized show that the homicide occurred on the 19th of May, 1906, on a farm situated on the San Antonio river, several miles from the City of San Antonio. Some time during the preceding fall appellant had leased the farm for a year from a Mrs. Smith, and about the 11th of April, a little over a month before the homicide, appellant, with the consent of Mrs. Smith, transferred his lease to deceased J. F. Warren. The transfer of the lease and the assumption of a debt of $46 by deceased was evidenced by written agreements, which were introduced in evidence. There was also some verbal understanding that appellant was to remain on the place and be employed as a hand by deceased. Appellant also introduced verbal agreement that deceased was to pay him or Mrs. Smith $48, either for rent or in connection with the purchase of some personal property by deceased from appellant; that no lien was taken on the property, because appellant was to remain on the place until said debt should be paid, which was to be out of the first hay cut and sold. From

defendant's standpoint, it appears the altercation arose in part out of the refusal of deceased to pay this bill. It appears that deceased took possession of the premises and moved into the house, which consisted of two rooms; that appellant moved into the barn where he slept, but boarded with deceased's family. A few days before the homicide appellant quit work for deceased. On the morning of the homicide appellant came to deceased for a settlement, which involved the balance of his wages and some other small items; appellant claimed $3.75 and deceased said it was 50 cents too much; however, deceased paid appellant the $3.75 and took his receipt for same. According to the State's theory, testified to by one Christian Reek and deceased's wife, at this settlement deceased told appellant that he wanted the barn; he needed it and to move off the place, to which appellant replied, as he left, he would "in a pig's eye." According to appellant's testimony he did not make this reply, but during the conversation deceased told him to move off the place, and he told him he would not do it until he settled with him. Deceased told him if he interfered with his team he would kill him, and told him furthermore to move off the place. According to the State's evidence deceased and one Christian Reek, who was assisting him in hauling hay from the place to San Antonio, left the place that morning with a load of hay, and in the meantime appellant also left the place, and went to San Antonio and there bought a gun and some ammunition and returned somewhere about 11 o'clock. He was heard walking the floor of the barn, and afterwards, about the time the wagon returned, was seen walking up and down in front of the barn. Just as the wagon came up he was seen to go down and take his position near the road at the bridge on the river. Deceased and his companion returned, and it seems took the horses out, Reek driving them and deceased walking along in front with a box of provisions, which he had bought in town, on his shoulder, according to some of the testimony, with an umbrella in his hand, and according to other testimony Reek had the umbrella. At this juncture appellant advanced toward them with his gun in his hand; deceased did not observe him, but his wife ran from the house telling him to get out of the way, that appellant was going to shoot him, and also Reek did the same thing. Deceased threw his box from his shoulder and dodged behind the mules. Appellant threw his gun under the mules and shot deceased in the groin, which caused his death.

Appellant says that he went to town to buy a gun and ammunition in order to have a settlement with deceased; that he feared deceased would attack him; that he came back, and when he saw the parties coming he went out to the road to have a settlement with deceased, and was standing there with his gun, with the point of the barrel on the river bridge floor; that when deceased saw him he threw the box down and ran towards Reek who handed him an umbrella in a suspicious way with the handle towards deceased; that deceased then ran around the mules as he thought to get an opportunity to shoot him

with a gun concealed in the umbrella, and appellant poked his gun under the mules and shot deceased. The umbrella, it appears, was found after the homicide near the body of deceased, but the deceased had no arms. This is a sufficient statement of the case to discuss the legal questions raised.

Appellant reserved a lengthy bill of exceptions by the testimony of the witness Hildebrand, who was introduced by the State to prove the good character of deceased Warren. Appellant insists that sufficient predicate was not laid by the witness Hildebrand in order to authorize him to speak as to the character of deceased; that he stated first he was not acquainted with his character, but could speak personally, and that he had never heard his character discussed. However, it is shown on further examination that the witness stated that he was sufficiently advised of the character of deceased in order to state what that character was as to being a peaceful, quiet man or as to being a dangerous man. It occurs to us, reviewing this testimony, that the witness was authorized to testify on the subject. Also, in connection with this evidence, it is objected, among other things, that after the witness stated that he had never heard the character of deceased discussed as being a dangerous man, that the court remarked in substance that it was not a disqualification that the witness had not heard his character discussed, and, as illustrative as to what he meant, remarked to counsel that he had not heard his reputation discussed, but that he thought he would be qualified to say that he was a man of good repute, as being peaceable, etc. This was objected to, but we fail to see that it was either erroneous or calculated to disparage the rights of the appellant. Appellant cites a number of cases to sustain his contention that said testimony was not admissible. Among others, he refers to Brownlee v. State, 13 Texas Crim. App., 257. An examination of said case shows that the witness there did not state he knew the general character and reputation of the parties, and, therefore, was not qualified to speak. Here, after an extended examination of the witness, he was asked direct the question "I will ask you Mr. Hildebrand to state whether or not you are acquainted with the general reputation of J. F. Warren in the community in which he lived as being a dangerous and violent man or a man of peaceable and quiet habits," and after this was explained to him, he stated that he did. We do not believe there can be any question that he was qualified to testify.

In this connection an objection was made to the argument of the district attorney to the effect that he stated to the jury that the witness Hildebrand after having had occasion to speak of and investigate the character of deceased, etc. While this was in effect the statement used, it does appear from his relationship and acquaintance with the witness, which he was required to testify to, he felt prepared to speak as to deceased's reputation. If this was error, we do

not think it was calculated to injure appellant, and was certainly not reversible error.

Appellant excepted to the charge of the court on murder in the second degree, because he claims that same authorizes the jury to find appellant guilty of murder in the second degree, though the passion aroused was on adequate cause. It may be observed here that the court did not charge on manslaughter, and this is assigned as error, which we will subsequently consider. We would remark, however, that in the view we take of this record, no adequate cause existed which required the court to charge on manslaughter, and so it would follow, as the court instructed the jury, if appellant slew deceased and his intent was formed and consummated in a mind excited by passion, which was not justifiable, he was guilty of murder in the second degree. As to a charge on manslaughter, in the statement of the case heretofore made, we think it is sufficient to disclose that manslaughter is not in the case. As far as we are advised, there was no such thing as adequate cause proven. If it be conceded even that self-defense was in the case, which we will hereafter discuss, but which the court charged on, there was no act or conduct on the part of deceased or his companion which would be sufficient to reduce the homicide to manslaughter. Appellant had prepared himself and went out to confront deceased, as he says, to make a settlement. Of course, it must occur to any one that appellant's conduct in bringing about this settlement was under very peculiar circumstances, to say the least of it. He did not wait for deceased to put up his team and go to his home before accosting him, but he intercepted him at the bridge with a shot-gun in his hand and did not mention settlement. Deceased was going to the house with a box of groceries on his shoulder, and from his standpoint he sees deceased's companion go to him and hand him an umbrella. No weapon is displayed by deceased, and for no reason, of which we are informed by this record, appellant suspicioned that deceased had a gun concealed in the umbrella in some way, and thereupon shot him down. If there is an adequate cause in this case, we fail to see it.

Appellant insists that the court's charge on threats is wholly insufficient because it is a negative charge, and not an affirmative charge, and to sustain his position he refers us to Pratt v. State, 96 S. W. Rep., 9, and Mitchell v. State, 96 S. W. Rep., 43, and other cases. The court's charge on this subject is subject to the vice pointed out by appellant, but the question is, did the facts of the case require of the court a charge on threats in connection with the theory of self-defense. In the first place we do not believe that the threats adduced by appellant in testimony are of such a character as to have required the court to charge thereon, even if it be conceded that appellant was entitled to a charge on self-defense which, as stated before, was given by the court, and also a charge on threats, in connection with self-defense, was given, but not of an affirmative char-

acter. Now, what was the threat? According to appellant's own testimony, and his is the only evidence involving any threat, the threat was purely conditional. Appellant states "that deceased said if he (appellant) interfered with his team he would kill him." Now, we do not understand that at the time of the homicide appellant was interfering with deceased's team; that is, the team deceased had purchased from appellant; he does not state that he was, nor does any other witness so state. So that, the threat was purely conditional, and no evidence showing the happening of the condition; consequently the court was not required to give a charge on this subject. In the second place, as we view this record, there was no self-defense in the case, and if there was none, a charge on self-defense either with or without threats was not required. See Penland v. State, 19 Texas Crim. App., 365, and Highsmith v. State, 41 Texas Crim. Rep., 32. As heretofore stated, the circumstances immediately attending the killing show that an occasion was sought by appellant; he had prepared himself for the occasion and intercepted deceased, certainly, at a very inopportune time to have a peaceable settlement of any disputed accounts between them; he claims that he was menaced by deceased with an umbrella, which he suspected must contain a deadly weapon, with which deceased was going to attack him. No weapon was exposed or displayed. Appellant said that he suspected that deceased must have had a weapon in the umbrella in some way; that he saw a bulk of something, and that the circumstance of deceased throwing the box off his shoulder and running to meet his companion Christian Reek, who gave him an umbrella, and deceased then dodging behind the mules, caused him (appellant) to suspect that he was seeking an opportunity to shoot him. It occurs to us, under the circumstances, that this suspicion is very far fetched. We have had hip-pocket movement, the vest-pocket movement, and various other movements of menace, which seems to have found a place in our jurisprudence, but this is the first time the umbrella movement has been called to our attention. Of course, the State accounts for deceased having an umbrella on the occasion; he carried the umbrella to town with him as it was threatening rain, and was bringing it back home when the appellant attacked him, but judging of the circumstances, from appellant's standpoint, which we must do, we fail to find any such circumstances of immediate and pressing danger by anything said or done by deceased which would cause him to have any reasonable apprehension to his life, or of serious bodily injury. The danger must be immediate and pressing. See Bush v. State, 40 Texas Crim. Rep., 539; and must not be brought about by the appellant. Under the circumstances, it seems to us after he saw deceased throw his box from his shoulder and run with the umbrella behind the mules, while he held the drop on him with his gun, he should have waited until some weapon was displayed or exposed, or until some maneuver was made by deceased showing that he was about to use some weapon. From

the testimony before us, appellant evidently prepared himself beforehand with a shot-gun loaded with buck-shot, and went to the place of homicide to intercept deceased for the purpose of killing him; that he was in no danger, either immediate or pressing, and that he shot him down in pursuance of a previously formed design. If the court was required to give a charge, under the circumstances, at all, such a charge was given, and considering the character of threats, the charge given by the court on this subject was sufficient.

We have examined the record carefully, and in our opinion the court was more liberal to appellant than the testimony entitled him to. The court not only gave self-defense in his favor, but he gave a number of special charges which we do not believe were called for, and we hold that other special charges requested were not required by any evidence in the case.

There being no error in the record, and the conviction being amply supported by the testimony, the judgment is affirmed.

*Affirmed.*