### J. C. JACKSON v. THE STATE.

No. 1266.  Decided June 7, 1911.

**Simple Assault—Evidence—Other Transactions.**

Where, upon trial of assault, it was a question of some importance as to who was responsible for the beginning of the difficulty, it was reversible error not to admit testimony that the prosecutor, while under the influence of the rage, passion and excitement engendered by prior difficulties with other parties, began the difficulty with the defendant; the prosecutor denying that he was excited, etc., at the time.

Appeal from the County Court of Milam. Tried below before the Hon. John Watson.

Appeal from a conviction of simple assault; penalty, a fine of $5. The opinion states the case.

*E. A. Wallace,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of simple assault alleged to have been committed upon E. J. M. Hopkins.

The indictment charges that by the use of a deadly weapon an aggravated assault was committed upon said Hopkins. There is nothing in the record to show that the knife used was a deadly weapon, but that will be out of the case by reason of the fact that the conviction was only for a simple assault.

The State's case is found in the evidence of Hopkins and his wife and Hairston. Hopkins himself testified that he was standing in his

doorway and saw appellant talking to some parties on the sidewalk, and invited him into the store; that appellant finally went in the store. Hopkins asked him to pay a bill due from appellant. He says appellant got mad and began to curse and abuse him; that he walked out to the front of the house still cursing and abusing him and threatening to kill him, and drew a knife, whereupon he, Hopkins, picked up a butcher-knife and walked up to and demanded of appellant that he put down his knife. At this junctcure appellant had walked out on the sidewalk and was standing in front of his, Hopkins', store. Hopkins approached him and demanded that he put up his knife, at the same time having his butcher-knife in readiness to protect himself. Appellant declined to do so and struck at the witness; that the stroke cut a hole in his hat; thereupon the witness struck him with his butcher-knife and continued to strike and cut him until parties separated them. Upon cross-examination this witness' testimony is somewhat shaken, especially with reference to the hat, as it was shown to be too small for him, and the evidence shows that the hat belonged to appellant and not to the witness. This witness denied being bareheaded at the time of the difficulty. He was made to try on the hat and it proved to be too small. Mrs. Hopkins testified that her husband asked appellant for a debt that was due him from appellant which made appellant angry, and he began cursing and abusing Hopkins, and continued to do so until he went out of the store. She says that appellant went out of the store with his knife open; that her husband followed him out with a butcher-knife and demanded that he hush; that her husband approached appellant with the butcher-knife and demanded of him that he put his knife up, shut up and go away, and that appellant refused to do so and continued to curse and abuse her husband, and to brandish his knife; whereupon Mr. Hopkins approached him and as he did so Jackson struck at him; that her husband then struck appellant with his butcher-knife three or four times, when they were separated.

Jim Hairston testified that he knew the parties, and saw the difficulty wherein appellant was cut by Hopkins. He says it transpired this way: That he, witness, was going to the postoffice about 10 o'clock, and as he got opposite the postoffice he saw Jackson and Mrs. Hopkins approached him and as he did so, Jackson struck at him; come out here I will kill him." That Mrs. Hopkins was excited and demanded of Jackson that he go away, whereupon Jackson went into the postoffice, which joined Hopkins' store, and as he was coming out of the postoffice Mr. Hopkins came out of his store with a butcher-knife, hurriedly and excitedly, and encountered Jackson just as he was coming out of the postoffice; that Hopkins raised aloft his butcher-knife, and said, "Put that knife up," in a very excited and threatening manner, to which Jackson replied that he did not have to, whereupon Hopkins struck Jackson with his butcher-knife across the hat, and they immediately clenched and Jackson was very badly cut in

several places, but Hopkins was not cut at all. He says Hopkins was bareheaded when he came out of the store, but he would not be positive about that, and that the butcher-knife he had in his hand was about twelve inches long; that Jackson made no effort to cut Hopkins until after Hopkins struck him. The above is the substance of the State's case.

Queen testified for the appellant to the effect that Jackson passed his place of business and stopped and talked to him a moment about some trivial matter; that he did not remember what, and while engaged in the conversation Hopkins came to the door and called Jackson, who replied, "In a moment." After finishing the conversation appellant went into Hopkins' store. Witness did not hear what transpired in the store, but after a short time appellant came out of the store followed by Mrs. Hopkins, who was speaking in a very excited manner to him, and asked him to go away, to which appellant replied that he did not have to, or words to that effect. Jackson went into the postoffice, and after he had disappeared in the door Hopkins rushed out of his store with a butcher-knife in his hand and went into the postoffice. Witness could not see Hopkins, but saw that he had his butcher-knife raised aloft. He struck downward and then disappeared in the postoffice. Witness saw nothing more of it until Jackson came out of the postoffice bleeding and supported by someone. Hopkins came out also. His recollection is that Hopkins came out bareheaded.

Another witness testified that he was untying his horse when Jackson came out of Hopkins' store followed by Mrs. Hopkins. Mrs. Hopkins was beseeching him to go off. Jackson then turned towards the postoffice and went inside. By the time the witness had his horse untied Hopkins was rushing out of the store with a large butcher-knife, and turned into the postoffice just as Jackson was coming out, with his knife raised up in a position to strike and demanded of Jackson something. That immediately after speaking to Jackson, Hopkins struck him with the butcher-knife. That the parties then clenched and struggled back into the postoffice when they were separated. Jackson was cut in several places and was bleeding profusely, while Hopkins was not cut at all. This witness did not see Jackson have any knife during the trouble.

Britz testified also that directly after Jackson left Hopkins' store and went into the postoffice, Hopkins came out "with a great big meat knife and went up to somebody standing in the postoffice door whom I took to be Mr. Jackson, but whom I could not see." That Hopkins was bareheaded. This witness did not see Jackson have any knife.

Appellant's testimony contradicted pretty much everything in regard to the fight to which Hopkins testified, especially denying that he made any assault on Hopkins; that he tried to defend himself as best he could, but did not make a success of it. He also testified that the

hat exhibited was his hat, and that he bought it from Scarbrough & Hicks. The hat was introduced in evidence and showed to have been bought at Scarbrough & Hicks, as it contained their brand and mark. This is practically and substantially the case on the facts.

During the examination of the witness Hopkins for the State, the appellant proposed to show that about thirty minutes preceding the difficulty with him, that Hopkins had committed an assault in his store upon a drummer, to which he pleaded guilty in the Justice Court, and that within fifteen minutes preceding the assault upon said drummer, he had committed another assault upon another drummer, to which he pleaded guilty in the same court, and that while acting under the passion and excitement engendered by said two assaults he had accosted appellant as he was passing or standing near his place of business, and asked him into his place of business, and while under the influence of the rage, passion and excitement engendered by the engagements with the two drummers he began the difficulty with the defendant. On objection by the State this evidence was excluded by the court. The witness would have testified to those things had he been permitted to do so. They proposed to prove the same facts by Mrs. Hopkins. This testimony was excluded also on objection by the State. In view of the testimony in the case, and in view of some of the evidence testified by Hopkins that he was not excited or mad at the time that he called Jackson in the store, we are of opinion the evidence should have gone to the jury. It was legitimate as tending to show who began the difficulty. Within thirty minutes he had had two difficulties with drummers, and chased them out of his store, and this evidence would have shown those facts, and that he was angry and enraged enough to chase them out of his store. It was a question of some importance as to who was responsible for the beginning of the difficulty, whether it was Jackson or Hopkins. Hopkins had called Jackson into his store and demanded a settlement of a small bill that Hopkins claimed to be due from Jackson, and Jackson had informed Hopkins that at the time he was not in condition to pay, but would be on the following Saturday. Jackson's testimony is to the effect that Hopkins became very much enraged and used violent language, whereupon he left the store, and that Hopkins followed him out on the sidewalk and in the postoffice, and made an assault upon him with a butcher-knife before he, Jackson, had ever done anything in the way of striking at Hopkins. Under these circumstances we are of opinion that this testimony was admissible, and that the court ered in excluding it.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*