### E. PHILLIPS v. THE STATE.

No. 3043. Decided April 8, 1914.

**1.—Shipping Intoxicating Liquor—Label—Baggage.**

Under article 606, Penal Code, it is a violation of law to ship intoxicating liquors in a trunk without labeling same, although it is checked as baggage.

**2.—Same—Venue—Connecting Carriers—Reshipment.**

Where, upon trial of delivering and causing to be delivered intoxicating liquors to a railroad company for shipment into local option territory without labeling it, the evidence showed that the liquor was delivered to a railway company in Dallas and was received in Upshur County; that the defendant knew at the time that the liquor could not be transported to Upshur County without being redelivered to another railway company in Upshur County, the venue was in either county, and being laid in Upshur County, there was no error. Davidson, Judge, dissenting.

**3.—Same—Jury and Jury Law—Challenge.**

A juror is not disqualified by the mere fact that he has heard the evidence on a former trial of the case, but the disqualifying conclusion must involve the guilt or innocence of the accused to the extent that it will influence his verdict, and where the juror swore that he had no fixed opinion and would try the case according to the law and the evidence, there was no error in overruling the challenge for cause. Following Long v. State, 59 Texas Crim. Rep., 103, and other cases.

**4.—Same—Complaint—Information.**

Where, upon trial of shipping intoxicating liquors without labeling same, the complaint and information were sufficient under the law, there was no error in overruling a motion to quash.

Appeal from the County Court of Upshur. Tried below before the Hon. W. H. McClelland.

Appeal from a conviction of unlawfully shipping intoxicating liquors into local option territory; penalty, a fine of $100 and sixty days confinement in the county jail.

The opinion states the case.

*Warren & Briggs,* for appellant.

*C. E. Lane,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was convicted of delivering and causing to be delivered intoxicating liquor to a railroad company for shipment into local option territory, without labeling it, intoxicating liquor. The proof would show that appellant left Gilmer in Upshur County, and went to Dallas, carrying a trunk with him. The night of the same day he returned from Dallas to Gilmer and had the trunk checked from Dallas to Gilmer in Upshur County. The trunk was seized when it arrived at Gilmer and found filled with whisky, packed in sawdust. The trunk was not labeled "intoxicating liquors" as required by law.

Appellant's first contention is that this constitutes no violation of law, as the liquor was carried in a trunk, checked as baggage. The testimony shows that one can carry 150 pounds as baggage, and this appellant's baggage was excessive and he had to pay 70 cents excess charges, but the question is presented, can one check intoxicating liquor as baggage and thus evade the provisions of article 606, Penal Code. This article reads, "Each and every person who shall place or have placed any package or parcel of whatever nature, containing intoxicating liquor for

shipment or *transportation*, etc.," without labeling it, shall be guilty. This language is broad enough, and it was the evident intent of the Legislature to embrace this character of shipment of intoxicating liquor as well as that covered by express or freight, for it says, "Place and caused to be placed with the railroad for transportation," and the court did not err in refusing to give peremptory instructions on this ground.

The next contention is that as he placed the liquor with the T. & P. at Dallas for transportation to Gilmer, the venue of his offense if any, would be in Dallas County, and not in Upshur. Ordinarily, this would be true, for venue is placed, under the statute, where the liquor is delivered or caused to be delivered, and not at the point to which it is transported, and the fact that it was received by appellant from the transportation company in Gilmer would not give jurisdiction to Upshur County. But appellant overlooks another phase of the testimony. It is true he originally delivered the intoxicating liquor to the transportation company at Dallas, and there had it checked to Gilmer in Upshur County. He knew at the time the T. & P. did not run to Gilmer, and could not itself transport the liquor to Gilmer, but would necessarily be compelled to deliver it to the St. Louis Southwestern Railway at Big Sandy for transportation from Big Sandy to Gilmer. Big Sandy is in Upshur County. When he delivered the liquor to the T. & P. Ry. at Dallas, with the knowledge that it, the T. & P. Ry., would be compelled to deliver to the St. Louis Southwestern Ry. at Big Sandy, did that constitute the T. & P. his agent to make such delivery? The statute is, one who shall deliver or cause to be delivered to a railroad company intoxicating liquor, without marking it, for transportation, etc., is guilty of the offense. Of course, appellant committed one offense when he placed the trunk with the T. & P. at Dallas for transportation,—of this offense Dallas County would alone have jurisdiction; but did he not commit another offense when the T. & P., as his agent, placed the intoxicating liquor with the St. Louis Southwestern Ry. for shipment from Big Sandy to Gilmer. There is no doubt if the T. & P. Railroad knew that it was receiving this liquor, unlabeled, for shipment, it could be prosecuted and convicted of this offense, and the St. Louis Southwestern Railway, if it knew when that road received it, the trunk contained intoxicating liquor, it could be prosecuted for the offense also; and, yet, it was not guilty as principal, or otherwise, when the T. & P. received it at Dallas, and its guilt did not arise until it received it at Big Sandy from the T. & P. We are of the opinion that when appellant delivered the liquor to the T. & P. at Dallas, for transportation to Gilmer and checked it through to Gilmer, knowing that to do so it would be necessary for it to be delivered to the St. Louis Southwestern for transportation to Gilmer, he, within the meaning of the statute, caused the delivery to be made, and caused the package to be placed with the St. Louis Southwestern Railway for shipment over that line, and was a party to another separate and distinct offense from that committed in Dallas County, for the St. L. S. W. committed an offense when it re-

ceived it in Upshur County, and of this latter offense Upshur County did have jurisdiction. When one puts in motion machinery, knowing the results to follow, he is responsible for all criminal acts that are the natural and intended results of his action. Therefore, the court did not err in refusing the instruction presenting this issue.

In another bill appellant contends. that the court erred in not sustaining a challenge as to the juror Joe Pickett. The bill alleges: "That he was a juror for the County Court of Upshur County at the September term, 1913; at which term the defendant, E. Phillips, who is the defendant in this case, was tried on a charge of carrying a pistol. It was claimed in said cause that a pistol was taken off of the person of E. Phillips at the depot in Gilmer at the time the officers claimed to have procured some trunks that had been shipped to Gilmer over the St. Louis Southwestern Railway Co. by E. Phillips, being the shipment of liquors involved in this case; that he heard the testimony of one witness in that trial and from what he heard he formed and now has an opinion as to the guilt or innocence of the defendant in this case. Said juror further testified that he could lay aside said opinion and go into the jury box and render a fair and impartial trial in this case based alone upon the testimony introduced in this trial, and without regard to what he had heard before or the opinion he now has.

"Thereupon the defendant challenged said juror for cause upon the ground that he was not a fair and impartial juror as contemplated by law in that he had already formed an opinion as to the guilt of the defendant.

"The court overruled said challenge and the defendant having exhausted. all his peremptory challenges on other jurors objectionable to him, the said Joe Pickett was permitted to and did sit as a juror in said cause over defendant's objection." The court, in approving the bill, says: "Juror Pickett testified that he had no fixed opinion and that if chosen on this jury to try the case that he would not consider what he had heard, but would be governed only by the evidence as brought out on the trial of this case." Were this a question of first impression, the writer individually would be inclined to hold that a juror that had heard any portion of the testimony on the trial of a cause, and had formed an opinion therefrom, should be held to be disqualified upon challenge for cause, but the unvarying rule of decision in this court since the rendition of the opinion in the case of Thompson v. State, 19 Texas Crim. App., 593, that a juror is not disqualified by the mere fact that he has heard the evidence on a former trial of the case. The disqualifying conclusion must involve the guilt or innocence of the accused to the extent that it will influence his verdict. This case was followed in Johnson v. State, 21 Texas Crim. App., 368; Steagald v. State, 22 Texas Crim. App., 464; Kennedy v. State, 19 Texas Crim. App., 618; Pierson v. State, 21 Texas Crim. App., 14; Peddy v. State, 31 Texas Crim. Rep., 547. In the case of Suit v. State, 30 Texas Crim. App., 319, this court held, speaking through Judge Davidson:

"Under the statute, in order to disqualify a juror on account of a conclusion on his part as to the guilt or innocence of the party on trial two things are necessary: (1) That there is in some way established in the mind of the juror a conclusion as to the guilt or innocence of such party. (2) That such conclusion will influence the juror in his action in finding a verdict. 'Established' has no statutory definition given it by our statutes, but as usually understood it means settled, fixed, confirmed. Such is the definition found in Bouvier's Law Dictionary. Under the statute, the conclusion formed by the juror must be such as will prevent him from finding a fair and impartial verdict in the case upon the law and evidence. The ultimatum of the matter is, can the juror give a fair and impartial verdict in the case upon the law and facts? If so, he is competent; if not, he is incompetent. . . . The juror swore that he could render a fair and impartial verdict upon the law and the evidence. The mere fact that a juror has established in his mind a conclusion of the guilt or innocence of the party on trial is not a sufficient cause for disqualification. That conclusion, if entertained, must go further, and be of such a character 'as will influence him in finding his verdict.' Code Crim. Proc., art. 636, subd. 13. The court did not err in overruling the cause of challenge urged against the juror." Reed v. State, 32 Texas Crim. Rep., 25; Adams v. State, 35 Texas Crim. Rep., 285; Trotter v. State, 37 Texas Crim. Rep., 468; Sawyer v. State, 39 Texas Crim. Rep., 557; Morrison v. State, 40 Texas Crim. Rep., 473; Long v. State, 59 Texas Crim. Rep., 103.

The complaint and information in this case charges an offense under the provisions of this article of the Code, and is not subject to the criticisms contained in the motion to quash.

The judgment is affirmed. *Affirmed.*

DAVIDSON, JUDGE (dissenting).—I have been unable to agree with my brethren in the disposition of this case. Appellant was indicted for shipping intoxicants into local option territory without having labeled or marked it "intoxicating liquors." There is a statute which requires, where a party ships intoxicating liquors into local option territory, he must place or cause to be placed on such shipment the fact that it is intoxicating liquors. The evidence discloses that the intoxicants were placed in a trunk and shipped as baggage from Dallas to Gilmer in Upshur County. The facts further show that the trunk was shipped over the T. & P. Railway Co. to a point of intersection with the Cotton Belt Railroad, and from that point on shipped and continued to its destination over the Cotton Belt road. The trunk was not labeled as required by the statute, and appellant was indicted and convicted in Upshur County, the point of destination of the shipment. The statute reads: "Each and every person in this State who shall place or have placed any package or parcel of whatever nature containing any intoxicating liquor with any express company, railroad company or other common carrier for shipment or transportation to any point in any county, justice pre-

cinct, school district, city or town or subdivision of a county, within this State, where the sale of intoxicating liquors has been prohibited under the laws of this State, shall place in a conspicious place on such package or parcel the name of the consignor and consignee, and the words 'intoxicating liquors' in plain letters." Then follows the punishment. Appellant did not comply with the terms of the statute, but shipped it in his trunk as baggage without placing the matter required upon the trunk. My brethren dispose of the case upon the theory and hold that it is a new offense on the part of the appellant at every point where the connecting carriers intersect each other, that is, wherever there is a change from one common carrier to the other the defendant is guilty of the shipment from each point, or rather an original shipment at each point. To this construction I can not agree. Under the terms of the statute the offence was complete, so far as the defendant was concerned, when he placed the goods with the T. & P. Railway at Dallas, the point of shipment. It passed them beyond his control, and his violation of the statute, if it occurred, occurred at the point of shipment. The statute nowhere undertakes to make a new offense at the point where the initial carrier conveys it to a connecting line. In other words, it was a through shipment from Dallas to Gilmer. It was not provided by statute that this should be a new offense every time there was a transfer from one connecting line to another, nor is there any provision in the statute which gives any county jurisdiction of the offense except the county where the shipment occurred. We have statutes which provide that venue may be in any one of several counties, dependent upon the terms of the statute. But these are exceptions to the rule, and plainly so provided by the statute. After providing venue in special cases we have this general statute: "In all cases except those enumerated in the previous articles of this chapter the proper county for the prosecution of offenses is that in which the offense was committed." This offense was committed in Dallas County, if committed at all. From that point appellant did not reship or undertake to reship the goods. They were placed in possession of the common carrier at Dallas on through shipment to the point of destination. The statute does not provide that it shall be an offense by shipper at every point where the transfer occurs to a connecting line, nor does it undertake to give any county jurisdiction except that in which the shipment occurred, or as the statute says, "where the offense was committed." My brethren in their decision created a new offense by judicial construction or decision not made by the Legislature. Our statute provides there shall be no offense in Texas unless provided by the Legislature. They have not authorized, nor could they authorize, the court to create offenses. This is not a continuous offense, therefore we must be relegated to the express language of the above statute itself in obedience to another statute which says that the language used in denouncing statutory offenses must be taken in its ordinary acceptation and given the sense in which it is used, that is, according to the plain import of the words employed by the Legislature. It would hardly be contended that on the

through shipment of goods under a civil contract that the shipper would be held responsible for the transfer from one connecting line to another connecting line, unless there was some special provision in the contract. The usual rule being, as I understand the law, where a shipment occurs under civil contract on a through bill of lading, that the shipper is not responsible for the transfer of goods to a connecting line between the point of shipment and the destination. The initial common carrier takes the goods under contract to see that the goods are delivered at the point of destination. The shipper is not responsible for transferring to the custody and care of connecting common carriers. I deem it useless to follow this matter. The decision, as I understand the law, is so obviously wrong it would hardly need discussion, but I place these observations of record as my dissent. I think the judgment ought to have been reversed and the prosecution dismissed. The case ought to have been tried for a violation of the law in Dallas County where the shipment occurred. I therefore dissent.