W. H. MADDOX v. THE STATE.

No. 7056.   Decided May 2, 1923.

Rehearing granted October 17, 1923.

**1.—Murder—Jury and Jury Law—Qualified Juror—Discretion of Court.**

Where a venireman has an opinion formed wholly from hearsay, and has heard none of the witnesses discuss the case, and avers his abilty to try and determine same solely from the law and evidence, his acceptance as a juror over objection presents no abuse of the discretion confided in trial courts. Following Adams v. State, 35 Texas Crim. Rep., 469, and other cases.

2.—Same—Evidence—Experimental Testimony.

Where, upon trial of murder, a witness testified that the day after the killing he and another went to said house and there one of them took a gun, going inside of the house, and pointed it toward the other and sighted through a certain hole in the wall along the gun barrel, which corresponded with the location of the wound in the body of the deceased, and defendant also afterwards testified that he shot the deceased from the inside of his house through said hole, there was no reversible error, and this, although defendant was not present when the experiment was made.

3.—Same—Evidence—General Reputation.

Where, upon trial of murder, upon preliminary examination of the witness, as to his knowledge and ability to testify to the reputation of the deceased, did not bring himself within the rule, there was no error in rejecting same. Following Mitchell v. State, 51 Texas Rep., 74, and other cases.

4.—Same—Evidence—General Reputation.

Nor was there any error to refuse to permit a woman to testify to the bad reputation of deceased for insulting women generally, and as to isolated instances of misconduct on the part of the deceased. Distinguished Jackson v. State, 138 S. W. Rep., 411.

5.—Same—Charge of Court—Bill of Exceptions.

Where the exceptions to the court's charge were not approved by the trial judge as having been presented before the charge was read to the jury, same cannot be considered on appeal.

6.—Same—Rehearing—Motive—Evidence—Other Transactions.

Where, upon trial of murder, the motive of the homicide of the grade of manslaughter was shown by the uncontradicted testimony of the defendant and his wife, and their veracity was only questioned by the introduction of testimony that defendant was under indictment for felony, which had not been tried and which was apparently based on facts discovered in the investigation of the instant homicide, to the effect that a misunderstanding had possibly arisen between the parties over some liquor transaction, which rested upon the finding of a still and some corn, etc., the conviction for murder must be set aside and a new trial granted.

7.—Same—Rehearing—State's Motion for Rehearing.

The State's motion now before the court, while a strong argument upon the facts, cannot be granted, and this court must adhere to its opinion granting the appellant a new trial.

Appeal from the District Court of Robertson. Tried below before the Honorable W. C. Davis.

Appeal from a conviction of murder; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*J. L. Goodman, G. A. Walters,* and *F. A. Woods* for appellant. On question of evidence of other transactions, Spillman v. State, 44 S. W. Rep., Windham v. State, 128 id., 1130; Walker v. State, 72 id., 997; Powdrill v. State, 138 id., 114; Menefee v. State, 149 id., 142.

On question of insufficiency of evidence, Mitchell v. State, 33 Texas Crim. Rep., 575; Hogan v. State, 13 Texas Crim. App., 335.

*R. G. Storey*, Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Robertson County of murder, and his punishment fixed at fifteen years in the penitentiary.

Where a venireman has an opinion formed wholly from hearsay, and has heard none of the witnesses discuss the case, and avers his ability to try and determine same solely from the law and evidence, his acceptance as a juror over objection presents no abuse of the discretion confided in trial courts. Adams v. State, 35 Texas Crim. Rep. 469; Deon v. State, 37 Texas Crim. Rep., 506; Keaton v. State, 40 Texas Crim. Rep., 145; Harding v. State, 39 Texas Crim. Rep., 579; Phillips v. State, 72 Texas Crim. Rep., 160, 167 S. W. Rep., 353.

The killing occurred at the home of appellant. The body of deceased was found in the yard by witnesses who arrived at the scene shortly after the shooting. The front room of the house was of logs. There was a hole on one side of the front door, about four inches wide by thirteen inches long. Powder burns appeared on the logs adjacent to this hole on the inside of the house. Witness Birch testified that the day after the killing he and Wakefield went to said house. Birch was one of those who reached the scene while the body of deceased was lying in the yard. He showed Wakefield where the body lay and the latter stood at said point while Birch went inside, took a gun and pointed it toward Wakefield and sighted through the hole in the wall along the gun barrel, and according to his testimony it could be aimed at a point on Wakefield's breast and shoulder at a place similar to the one on the body of deceased where same was penetrated by buckshot. Objection to this testimony was overruled and this action here complained of. Appellant testified in his own behalf that he fired the first shot at deceased from the inside of his house through this hole. He said deceased was in the yard with a gun in his hand, and that after firing the first shot through the hole he opened the door and fired again. There were twenty-three buckshot holes in the shoulder of deceased and in the back of his head a wound where apparently a load of buckshot had entered almost solidly, witnesses testifying that three fingers could be introduced in this hole. We think it no error to admit the testimony. The conditions appeared substantially similar and there is nothing in the testimony to contradict that of appellant. The fact that Birch had to stoop, inside the house, to sight the gun at Wakefield's shoulder, was pertinent. The testimony as to the range of the shot in the shoulder of deceased showed that same was slightly upward. For authorities on testi-

mony as to experiments see Branch's Ann. P. C., Sec. 128. We do not think the fact that neither appellant nor any member of his family was present at the house on the occasion of the experiment, would add force to the objection to such testimony. The cases of Harris v. State, 62 Texas Crim. Rep., 235, 137 S. W. Rep., 373, and Reagan v. State, 84 Texas Crim. Rep., 468, 208 S. W. Rep., 523, cited by appellant, seem in nowise in conflict with our conclusion.

At various times while on the witness stand appellant was asked concerning certain shelled corn found in a sack under his stove. He testified that it belonged to deceased who left it at his house the day before the homicide. He also stated that there was some corn buried in a box in his cow lot, but asserted that he did not use the lot and that the corn was also placed there by deceased, admitting, however, that it was in his (appellant's) meat box. He denied having had a fuss with deceased over where said box of corn should be buried, and denied having a fuss about taking it away from there, and denied having a fuss with deceased about a still which was near his well. In his testimony he stated that the last thing deceased said to him the afternoon before the killing was, to put the sack with malt in it, in, for he did not want it to get wet. We observe in the testimony of the witness Whatley that he said he stepped the distance from appellant's house to "the still down there." We quote from appellant's bill of exceptions his objection:

"To all of which testimony the defendant then and there objected for the reason and because there was no testimony showing that the ownership or possession of said corn or the circumstances of the same having been placed in said kitchen that shed any light on the issues involved in this case, or the circumstances of the homicide in question, and highly prejudicial to the defense in said case, and was calculated to prejudice the minds of the jury against this defendant, and was intended and doubtless will have the effect of causing the jury to conjecture that the ownership, possession and circumstances connected with said corn would tend to prove an inadequate crime with which the defendant was connected, and another and different motive for the commission of the homicide other than the defendant's explanation of the cause of the killing."

It is evident that the State sought to attribute to the killing a different motive from that claimed by appellant, which was an insult offered to his wife by deceased,—else manslaughter alone might have been involved. Authorities are numerous in our own decisions to the effect that evidence tending to show motive is not objectionable because it suggests or shows an extraneous crime. Mr. Branch cites many such authorities in Sec. 1882 of his Annotated P. C. Appellant admitted that he was under indictment for making whisky, and that corn was buried in his cow lot and in his meat box, adjacent to his

house; that malt was in a sack at his house and that shelled corn was in a sack under his stove, but these things he said belonged to deceased, and that what he had done in connection with any of them was at the request of deceased. We know of no authorities holding inadmissible testimony that tended to show a motive for a killing, the question as to the amount of such proof being for the jury. We suppose appellant's objection to all the testimony relative to the corn, etc., was based on the proposition that it was hurtful to him as having a tendency to show him engaged in illicit liquor making. If it did so tend, this would seem to add force to the State's purposes in introducing it. Appellant was not at work on the morning of the homicide but was at his house. An appearance of a man at the place where others are engaged in illicit liquor making, has on many occasions led to a killing. We are not to be understood as saying that this led to the instant killing, for we but illustrate the reason why the evidence may have been admitted by the learned trial judge.

Upon a preliminary examination in order to test the sufficiency of his knowledge concerning the facts upon which he asserts his ability to give testimony to the bad reputation of another in a particular regard, one who affirms that but one person has ever been heard by him to say anything against such reputation, has not qualified; and the trial court did not err in rejecting the testimony of such witness. Trammell v. State, 10 Texas Crim. App. 467; Tyler v. State, 46 Texas Crim. Rep. 13; Mitchell v. State, 51 Texas Crim. Rep., 74; Reid v. State, 57 S. W. Rep., 663.

Nor do we think it error to refuse to permit a woman to testify to the bad reputation of deceased for insulting women, who said that she had known him for thirty-six years and never heard any claim that his reputation in this regard was bad until after he was killed and that she then heard of an insult offered by him to the wife of appellant on the occasion of the killing, and heard of an insult offered to one other woman and was willing to testify that deceased had in fact insulted her, witness. The authorities cited by appellant in support of this contention go only to the extent of holding that when it is claimed that the killing was because of an insult to a female relative, the general reputation of the deceased for virtue and chastity is admissible, if the fact of such insult is contested. In Tatum v. State, 66 S. W. Rep., 553, and McComas v. State, 72 S. W. Rep., 189, cited by appellant, this court held that evidence of isolated instances of misconduct on the part of deceased, would not be admissible in support of his bad character. We also think the learned counsel for appellant misapprehends the case of Jackson v. State, 62 Texas Crim. Rep., 541, 138 S. W. Rep. 411, cited by him in support of the proposition that the court should have admitted the testimony of Mrs. Wilkerson that deceased insulted her before he is claimed to

95 T. C.—28

have insulted the wife of appellant. The Jackson case was one of assault in which the accused claimed that the prosecuting witness had assaulted him first, and we held that the accused should have been permitted to show by testimony that prosecuting witness, a few moments before the difficulty in question, had made two successive assaults upon other parties, for the purpose of showing that he was laboring under the rage engendered by said prior difficulties at the time he had the controversy which was the basis of the present prosecution. We are unable to find anything in this holding supporting appellant's contention that he should have been allowed to prove a prior insult offered by deceased to another woman.

Appellant insists that the evidence does not support the verdict. We regret we can not agree with this contention. Our law does not forfeit the life of one who insults a woman merely because the female relative of such woman decided to kill him, but does concede  in extenuation of human frailty, that if information of such insult does in fact produce such condition of rage or resentment in the mind of the male relative as to render him incapable of cool reflection and as a result of such passion death is caused, it is but manslaughter. We have then in every case of manslaughter certain questions: Did the adequate cause exist for the passion? Was the mind of the accused in fact aroused by such cause to that extent which rendered him incapable of cool reflection? Was this the cause of the homicide? These are fact questions for the jury. Pausing to notice one of them as applicable here, we observe that while appellant had two guns at his house, he got another better one on the day of the homicide, averring his purpose to be to kill hawks with it. The wife of appellant claimed that deceased insulted her on the morning preceding the day of the homicide, but she admitted that she was with her husband and also with deceased a number of times during said day but did not tell her husband of the alleged insult until the morning following. She gave as her reason that she had no good opportunity to see him alone. She states that she told him the next morning of the alleged insult and that soon after she told him they observed deceased coming toward appellant's house. Appellant testifies that he got the gun that he had just obtained from his father, took out of it the shells loaded with squirrel shot and in their stead put two shells loaded with buckshot. He said deceased was coming toward his house with a gun in his hand. It was shown without dispute that deceased was a great hunter and appellant admitted that he had seen him around his house with a gun on many occasions before. He further testified that after he got his gun loaded with buckshot he called out to deceased and told him not to come in there, and that deceased kept coming. Appellant said that he then put his gun through the hole in the wall and shot. He denied firing both barrels on this occasion but said he opened the

door and shot at deceased who had swerved in his course and was going toward another door of the house. The State witnesses found at a place near appellant's house a number of buckshot shells and found with them a piece of metal admitted to be used for dropping in the barrel of said gun in order to force shells out, there seeming some trouble with the ejector. These shells were examined and each contained only twelve buckshot. As stated above, there were twenty-three buckshot holes in the shoulder of deceased and the witnesses said they thought at one hole more than one buckshot entered. Two empty shells recently discharged were found at one place in the house of appellant and another in the same condition, at another place. The gun held two shells which had not been discharged, when it was found after the homicide, and said shells could not be gotten out of the gun except by dropping upon them the piece of metal above mentioned. The State claimed that after the deceased was shot with both barrels of the gun through the hole and fell, that appellant walked up to him and fired another load of buckshot at close range in the back of his head, breaking his neck. The condition of the large hole found in the back of the head of deceased, together with his broken neck, lend color to this theory. Do these facts show a mind so wrought upon by a communicated insult as to bring it to a condition of uncontrollable passion? If so, how account for the exchange of squirrel shot shells for buckshot shells after observing the approach of deceased? How account for the challenge to deceased and the order to him not to come any further? How account for a load of shot entering the back of the head after he had already in his body the contents of two buckshot shells? These suggestions occur as possibly some of the reasons which may have been in the minds of the jurors causing them to convict of a higher degree of homicide than manslaughter.

What is denominated in the record the exceptions to the court's charge, was not approved by the trial judge as having been presented before the charge was read to the jury, nor is there any notation thereon of that fact by the trial court; nor is there a separate bill of exceptions presenting said purported exceptions to the charge.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

ON REHEARING.

June 26, 1923.

LATTIMORE, JUDGE.—We recognize that proof of motive for a homicide is not indispensable to conviction, but when motive for such homicide of the grade of manslaughter is shown by the uncontradicted testimony of the accused and his wife, and their character for truth

and veracity is in no way assailed, except by proof that he is under indictment for a felony which has not been tried and which was based apparently on facts discovered in the investigation of the instant homicide; and the only suggestion of a motive other than insult to the wife of appellant is that possibly a misunderstanding had arise over some liquor transactions, the inference of which misunderstandng rests entirely upon the fact that on the premises occupied by appellant but which belonged to deceased, were found a still and some corn, etc., claimed by appellant to be the property of deceased, this court finds itself in such condition of doubt as to whether the conviction for murder may not have arisen from some misapprehension as that upon more mature reflection and consideration of the forcible motion for rehearing and argument on behalf of appellant, we are unwilling to let this conviction stand. We think the procedure on the trial in the court below was not in violation of law, but on the sufficiency of the testimony to show murder and not manslaughter, we are so unable to satisfy our minds as that we feel compelled to conclude that the case should be reversed. We are not to be understood as saying that the evidence may not be strong enough to support a conviction for murder, but that the mind of this court upon an inspection of this record is left in such condition as that we are desirous that the evidence should be passed upon again by another jury of the country.

The motion for rehearing is granted, the affirmance is set aside, and the judgment is now reversed and the cause remanded.

*Reversed and remanded.*

### ON STATE'S MOTION FOR REHEARING.

October 17, 1923.

HAWKINS, JUDGE.—A reversal was ordered upon consideration of appellant's motion for rehearing. The state has now filed its motion for rehearing wherein it is insisted that the original opinion affirming the judgment was the correct disposition of the case. The motion now before us is a strong argument upon the facts, but they were all considered at the time the rehearing was granted. We still are of opinion the record justified that order.

The state's motion will therefore be overruled.

*Overruled.*