### Rube Price v. The State.

*No. 1354. Decided November 11th, 1896.*

**1. Murder—Charge—Self-Defense—Actual and Apparent Danger.**

On a trial for murder, where there was some evidence that when the parties met in the road, in front of defendant's house, the deceased being on horseback, after some words had passed between them, deceased turned in his saddle and threw his hand toward his saddle bags, whereupon the defendant shot him; and the court charged the jury that, if defendant killed deceased, but, at the time of doing so, deceased made an attack on him which, from the manner and character of it, and defendant's knowledge of the character and disposition of the deceased, caused defendant to have a reasonable expectation or fear of death or serious bodily injury, and that acting under such reasonable expectation he killed the deceased, the jury should acquit him; and, in this connection, further charged them that the danger need not be actual, but apparent. Held: The charge was sufficient.

**2. Manslaughter—Insult Toward Female Relative—Charge.**

Where the court charged the jury, that an insult towards a female relation was an adequate cause to reduce a homicide to manslaughter; and, that if defendant killed deceased in a sudden transport of passion, aroused by an adequate cause, as heretofore explained, he would be guilty of manslaughter. Held: Sufficient.

**3. Verdict.**

Where the verdict of the jury was written "guitly," and there was no loop in either of the letters, intended for "l" and "t," and only the first of the letters is crossed, the cross not extending over the second. Held: The word was unquestionably intended for the word "guilty," was so read by the jury in rendering their verdict, and would deceive nobody.

**4. New Trial—Newly-Discovered Evidence.**

A new trial will not be granted for newly discovered evidence, where the sworn motion fails to show or state that the evidence has come to the knowledge of affiant since the trial, and that there was not a want of diligence on his part to discover it sooner; nor where the evidence is only cumulative and corroborative of the witnesses who testified in the case.

Appeal from the District Court of Navarro. Tried below before Hon. Rufus Hardy.

Appeal from a conviction for murder in the second degree; penalty, twenty years' imprisonment in the penitentiary.

The indictment charged the defendant with the murder of one J. A. Beardoff, in Navarro County, on the 19th day of February, A. D. 1896, by shooting him with a gun. The parties were brothers-in-law, the deceased having married defendant's sister. The record does not disclose

what was the origin of the trouble between the parties, but there had been several quarrels between defendant and deceased, and deceased and defendant's brother, Tom Price. And, defendant also proved that deceased had made serious threats against him, which had been communicated to him before the killing. The parties only lived some three or four hundred yards apart. On the morning of the killing, deceased started, on horseback, to the village of Wortham. He had a pair of saddlebags on his saddle. A neighbor of his, one Weaver, had just passed his house, going toward Wortham, and deceased had started to overtake Weaver, and in passing the defendant's house, he met the defendant in the road where the killing occurred.

Weaver's testimony, in regard to the killing, is as follows: "I had started to Wortham on the morning of the killing; had to go by the house of defendant, looked back after I had passed the deceased's house, and saw him coming on behind me in a little trot. When I had got past defendant's house, some 150 yards, I heard some one speak; don't know what was said; can't say whether he said good morning, hold on, or what; the word attracted my attention, and I looked back and saw defendant in middle of the road, in front of deceased, with gun presented. My horse made four or five steps, and I looked back and saw defendant raise his gun to his shoulder and fire. Deceased either fell or jumped off his horse, and defendant ran right close up to him and fired again into his back, and deceased fell. Suppose they ran some ten or fifteen steps. I saw no demonstration on the part of deceased, as if to draw a weapon, and heard no cursing or loud talking. Deceased just about had time to get there from where I last saw him when the first shot was fired."

Mrs. Mary A. Price, mother of defendant, testified: "Defendant came in, got his gun and tobacco and went out. He had not gone more than thirty feet when deceased rode up and told him to stop, and began to curse him. I went to the door and told him to go on, and not stop there and raise another row. He cursed me for a God damned old bitch, and ran his hand into his saddle pocket and said, God damn you, I will bring you to sorrow. When he made the motion with his hand I thought he was going to shoot, and turned and ran into the house. The gate, where I was standing, was not more than three steps from my room door. I had made three or four steps into the room when the gun fired. Didn't see the shooting."

No weapon was found on the body of deceased or in his saddle bags after the shooting.

*Croft & Croft*, for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and given twenty years in the penitentiary, and prosecutes this appeal. There is no bill of exceptions in the record. We will,

however, notice such assignments of error as we deem necessary to a disposition of this case. The court charged on murder in the first and second degrees, manslaughter and self-defense. There is some slight evidence in the record of self-defense, and the court on this subject charged the jury substantially as follows: "If you believe the defendant killed the deceased, but further believe that, at the time of so doing, the deceased made an attack on him, which, from the manner and character of it, and the relative strength of the parties, and the defendant's knowledge of the character and disposition of the deceased, caused the defendant to have a reasonable expectation of death or serious bodily injury, that, acting under such reasonable expectation or fear, he killed the deceased, then you should acquit him." And the court further charged that the danger need not be actual, but apparent. This was all that was called for by the facts of the case bearing upon this phase of it. There is some evidence that when the parties met, just in front of the residence of the defendant, the deceased being on horseback, on his way to Wortham, and defendant having met him in the road in front of his house, after some words between the parties the deceased was seen to turn in his saddle, and throw his hand toward his saddlebags, and at this juncture defendant shot him with a shotgun. So, the jury were properly instructed as to self-defense in the charge as above set out. There was nothing in the testimony calling for a charge on self-defense, predicated on the idea that deceased had attacked, and was in the act of assaulting, the mother of the defendant. If such attempt at assault was made, it had transpired before the shooting, and the mother of the defendant at the time was in her house, out of view of the parties, as she herself testified, and did not see the shooting. The charge on manslaughter, while very general in its terms, was sufficient. The jury were told that an insult towards a female relative of defendant was an adequate cause to reduce the homicide to manslaughter, and then they were instructed that if the defendant killed the deceased in a sudden transport of passion, aroused by adequate cause, as heretofore explained, he would be guilty of manslaughter. Appellant complains that the verdict of the jury found the defendant *guitly*. It will be noticed that there is not a loop in either of the letters intended for "l" and "t" and that only the first of said letters is crossed, the cross not extending over the second. The failure to make a loop in the "l" is not of unusual occurrence, and it often happens that the cross or dash in writing the letter "t" is not extended over the proper letter. Unquestionably, this word was written for the proper word "guilty," and was so read by the jury in rendering their verdict. It would deceive nobody, and we regard the assignment as hypercritical. See, Harris v. State (Tex. Crim. App.), 34 S. W. Rep., 922, and authorities there cited. Appellant assigns, as one of his grounds for a new trial, newly-discovered testimony. As sworn to by himself, this motion fails to show or state that the evidence has come to his knowledge since the trial, and that there was not a want of diligence on his part to discover it sooner. The newly-discovered testimony, as

set out in the affidavits of the witnesses, is cumulative and corroborative of the witnesses who testified in the case. They lived within a short distance of where the homicide occurred (it having occurred in front of the residence of the defendant), and in plain view of the witnesses who testified to facts concerning the killing. The testimony of another witness, that the witness Weaver expressed surprise after the killing with reference to the homicide, would only go to impeach his testimony while on the stand to the effect that he was within about 150 yards, or, at least, within a short distance of the scene of the homicide, at the time it occurred, and saw all the matters attendant upon the killing to which he did testify. Under a long line of decisions in this State, these matters do not constitute newly-discovered testimony. If the defendant had used any diligence at all, he could have ascertained from these neighbors, who lived in plain view of his house, whether they knew any fact in connection with the homicide. He does not undertake to show by any affidavits that he used any diligence. In this state of case, under the authorities, this portion of the motion for a new trial shows no merit. There being no errors in the record, the judgment is affirmed.

*Affirmed.*