### JERRY KENT v. THE STATE.

No. 15009. Delivered May 4, 1932.
Rehearing Denied June 15, 1932.
Reported in 50 S. W. (2d) 817.

The opinion states the case.

*J. Lee Cearley,* of Cisco, and *F. E. Mitchell,* of Cross Plains, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for forty years.

It was charged in the indictment that appellant, with malice aforethought, killed R. L. Ensor by shooting him with a gun.

The body of deceased was found lying by his automobile near a gate. An examination of the ground near the body disclosed some tracks where some small saplings had been cut down. At the place where the tracks were discovered some twigs had been broken or twisted off. The ground showed that some one had knelt at the place where the twigs were broken. Tracks led away from the clump of bushes, showing the toe and heel print. A twelve-gauge shotgun shell and some wadding were found in the clump of bushes near the tracks. One of these tracks was measured. Some bootees worn by appellant were also measured. The witness making the measurements, upon being asked how they compared, said: "Just exactly alike; the same thing on the tape." This witness testified further: "I testified this morning about that track that was some ten or fifteen yards southwest of a clump of bushes that was covered up with a tin lid or something made of tin. I went to this track with that bootee (the bootee worn by appellant). You went with me. When I got there I placed the bootee in the track. I placed the heel of the bootee

in the heel of the track. When I did that I found that they were very similar. When it went down in there it fit exactly."

The brush near the body of deceased appeared to have been recently cut. The officers discovered near the tracks a stub of a cigarette rolled in a certain brand of paper. Appellant was arrested near Brownwood a few days after the homicide. A twelve-gauge single-barrel shotgun was found in the room in which he was arrested. In the gun was found a shotgun shell loaded with No. 1 buck shot, Speed Load. The wadding found near the body of deceased was labeled "No. 1, buck shot, Speed Load." The officers also found a suit case in the room. In the suit case they found a trench knife. The officers testified that the trench knife was suitable for cutting brush. The shotgun found in appellant's possession belonged to his uncle, Hardy Kent. Hardy Kent testified that he missed the gun shortly before deceased was killed. He said he did not have any buckshot in the gun and did not have any No. 1 buck shot around the place when the gun was taken. A business man in Brownwood testified that shortly before deceased was killed he sold appellant three shotgun shells known as Speed Load, No. 1 buckshot. The shells he sold appellant corresponded with the one found in the shotgun. He testified further that it was unusual to sell buckshot shells at that time of the year. A witness who lived near Rising Star testified that on the day of the homicide he gave appellant a package of cigarette papers. It appears that these papers corresponded with the cigarette found at the scene of the homicide. On the day of the homicide appellant was driving a car belonging to his uncle, Hardy Kent. It was a Ford car, with a piece of curtain by the side of the driver. Witnesses testified to having seen a car of this description going toward the scene of the homcide. One or two witnesses testified that appellant was in the car. Other witnesses testified to having seen the car come from the direction of the homicide. Shortly thereafter the body of deceased was found. An examination of the body of deceased disclosed that he had been shot with buckshot. There were also some shot in a tree near the body. The sheriff and a witness having expert knowledge of firearms made an experiment with the shotgun found in appellant's possession, by firing one of the Speed Load No. 1 buck shot shells. The expert testified that the imprint made by the firing pin on the shell corresponded with that found on the shell near the body of deceased. The shell found near the body of deceased was the same kind of shotgun shell the officers discovered in the gun when they arrested appellant. We quote from the testimony of the expert witness as follows: "I have examined this shotgun shell, identified as exhibit three (shell found near body), with the edges rolled down. I have examined that shell. In my examination I saw another shell fired in that shotgun. It was exactly the same kind of a shell as this one, in every respect. I know what it

was loaded with. It was loaded with what is known as Speed Load, number one buckshot. Sheriff Edwards fired that shot. I was present when he fired the gun. I have that shell. I examined that shell. You call this the butt end of the shell. This is known as the face of the cartridge. I examined the face of that cartridge that was shot in that gun, and it contained number one buckshot, speed loan. I examined it under my microscope magnifying glass, which I use. I found thirteen separate points of comparison in both shells. The first point of comparison is what is known as accidental. Any shell which has any mark about it, showing that the gun was not working in proper manner, that mark would be accidental. That first mark, referred to as accidental has five fine, sub-points, known as sub-points of comparison. These points are similar in both shells. Under the magnifying glass which I used there is a similarity in both shells. I found some other marks of similarity. To the right of that there are seven points of comparison in both shells, and to the upper left there are five other points of comparison. The point of contact of the firing pin makes the points of comparison on the face of the shot gun shell. Those in this particular case were caused by corrosion on the top of the firing pin. Corrosion is the result of rust on the sides and end of the firing pin. When the firing pin enters the cartridge it leaves its imprint on the face of the cartridge, that is, in the detonation or priming cap of the cartridge. It leaves its imprint in the priming cap of the cartridge. You can't see that very well with your naked eye. You can see it when you place it under the high power magnifying glass. I examined the plunger in this gun, in question. The indentations on this cartridge, exhibit three, with the edges rolled down, correspond with the protrusions on the face of the firing pin point for point."

Shortly before the homicide, according to the testimony of state's witnesses, appellant learned that his car had been searched. He had been advised that deceased had caused the search to be made. Upon learning this, appellant said, in speaking of deceased: "I will kill him if I get a chance." At the time deceased was killed Henry Jones was chopping wood some distance away. This witness had theretofore been accused of burglarizing the house of deceased and stealing a pistol from him. He testified that since that time he and deceased had been on good terms. He denied that he had anything to do with killing deceased. It appears that this witness had been a fugitive from justice. Appellant offered no testimony.

We are unable to reach the conclusion that the evidence is insufficient.

Bill of exception No. 1 presents the following occurrence: The witness J. J. Smith, who qualified as an expert, testified to an experiment he and the sheriff made with the shotgun found in appellant's possession. It appears that he and the sheriff fired the shell found in the gun, and that

the witness compared this shell with the one found at the scene of the homicide for the purpose of determining whether the mark made by the firing pin corresponded with that on the shell found near the body. Appellant objected to the testimony touching this experiment on the ground that it was made out of his presence and hearing, and that he had no opportunity to be present at the time it was made. This objection was properly overruled. The fact that appellant was not present did not render the testimony touching the result of the experiment inadmissible. Maddox v. State, 95 Texas Crim. Rep., 429, 254 S. W., 800.

Bill of exception No. 2 refers to the statement of facts for the testimony of the expert witness, in which it is shown he testified as follows: "I have examined this shotgun shell identified as exhibit 3 (shell found at the scene of the homicide), with the edges rolled down. I have examined that shell. In my examination I saw another shell fired in that shotgun. It was exactly the same kind of a shell as this one, in every respect. I know what it was loaded with. It was loaded with what is known as Speed Load, No. 1 buck shot. Sheriff Edwards fired that shot. I was present when he fired the gun. I have that shell. I examined that shell."

The bill of exception embracing appellant's objection reads as follows: "'The defendant then and there objected and excepted to the witness declaring to the jury his conclusion reached from the experiment made, in this 'that it was exactly as this one in every respect, I know that it was loaded with Speed Load buck shot, Sheriff Edwards fired that shot, I was present, and that he had examined the shell with the edges rolled down, being exhibit 3' being the testimony objected to, and the court then and there overruled said objection and the said witness was permitted to make such statement to the jury, to which action and ruling of the court defendant excepted, because it permitted the witness to give conclusion, to the jury, and not a development of such facts before the jury, and allow them to use their common knowledge and determine from the facts their conclusion therefrom."

We understand from the bill of exception and the statement of facts that the witness testified that the shell he and the sheriff fired in the gun was loaded with what is known as Speed Load, No. 1 buck shot. He did not say that the shell found near the body was loaded with No. 1 Speed Load buck shot. It was proper for the witness to state the shell he and the sheriff used was loaded with the character of buck shot mentioned. It appears from the testimony of the witness that he had examined the shells under a strong microscope. The wadding found at the scene of the homicide was also examined by him. Appellant admits in his brief that the testimony showed that a portion of the wadding found near the body of deceased was labeled "No. 1 Buck Shot, Speed Load." The two shells were before the jury and had been fully described by the witnesses, and their similarity was also described. The statement of the

witness, after describing the shells, that the shell discovered near the body and that found in the gun were the same kind in every respect would seem to have been, in effect, the expression of an opinion that the shells were alike. See Adams v. State, 105 Texas Crim. Rep., 175, 287 S. W., 499; Mueller v. State, 85 Texas Crim. Rep., 346, 215 S. W., 93; Howard v. State, 77 Texas Crim. Rep., 185, 178 S. W., 506; Freeman v. State, 91 Texas Crim. Rep., 410, 239 S. W., 969.

Bill of exception No. 3 recites that appellant objected to the testimony of the expert witness to the effect that he had been employed by the sheriff to make the investigation he had described to the jury. We see no error in this matter.

In his motion for new trial appellant set up newly discovered evidence, alleging that two witnesses had seen him in Rising Star, some distance removed from the scene of the homicide, at about 5 o'clock in the afternoon on the day of the homicide. It was averred that the proof showed that the homicide occurred fifty miles away from Rising Star between 4:30 and 5 o'clock in the afternoon. One of these witnesses testified on the hearing of the motion that he saw appellant at the time mentioned, driving up the street in a model T Ford car. He said that he was coming out of a picture show at the time he saw appellant. He said he had not told appellant or his counsel or appellant's father about the matter until after the trial. He testified, further, that he know it was between 5 and 5:30 that he saw appellant on account of the fact that the picture show was over at that time. The other witness testified, in substance, that he saw appellant in Rising Star at about 5:30 on the afternoon of the day of the killing. He said that appellant was in front of the picture show at the time, driving down the street in a Ford coupe. He said that there was a girl in the car with appellant. He testified, further, that he fixed the time because he looked at the clock. On cross-examination he fixed the time at 4:30 p. m. The first witness testified that immediately after he saw appellant in front of the picture show he and the second witness walked home together. He said, further, that no one was in the car with appellant. The second witness denied that the first witness was with him when he saw appellant, saying he did not see him until that night, and that they did not go home together. Appellant did not testify on the hearing of the motion for new trial. It does not appear that his attorney made affidavit that the testimony alleged to be newly discovered was not known to him before the trial; nor did he testify on the hearing of the motion.

It was incumbent upon appellant to satisfy the court that the new testimony came to his knowledge since the trial and that it was not known beforehand. Branch's Annotated Penal Code, sec. 192; Price v. State, 36 Texas Crim. Rep., 403, 37 S. W., 743. In other words, in addition to setting forth the facts in which the new testimony consists,

the accused must satisfy the court that the new testimony has come to his knowledge since the trial, and that it was not owing to the want of diligence that it was not discovered sooner. Branch's Annotated Penal Code, sec. 198; Hall v. State (Texas Crim. App.), 105 S. W., 177. It was not shown that appellant made any effort to ascertain whether there were witnesses in Rising Star who had seen him there on the occasion in question. If appellant was in Rising Star, he knew it. In not making any investigation, appellant and his counsel failed to use the diligence demanded by the law. It is observed that appellant offered no testimony on the trial raising the issue of alibi.

The witnesses alleged to be newly discovered contradicted themselves in many particulars. We think the trial court was warranted in concluding, after hearing the witnesses, and considering the contradictions to which reference has been made, that the newly discovered testimony was not probably true. See Branch's Annotated Penal Code, sec. 200; Harris v. State (Texas Crim. App.), 56 S. W., 622. In view of the contradictions in the testimony of the witnesses and of the testimony heard upon the trial of the case, we think the trial court was warranted in concluding that such testimony would not likely change the result if a new trial was granted. Branch's Annotated Penal Code, sec. 201; Gass v. State (Texas Crim. App.), 56 S. W., 73.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—We have again reviewed the entire record in the light of appellant's motion, and his insistence that he should have been given a new trial because of newly discovered evidence. We have to confess that we have rarely seen a case of circumstantial evidence manifesting as much thoroughness in its preparation and in the presentation of its many strong links in the chain of circumstances, as the one before us. Many of these circumstances are set out in our former opinion, but many others could be iterated. For instance and as shedding light on the improbability of the truth of the testimony of the newly discovered witnesses, whose contradictions and inconsistencies were noted in our former opinion, we observe that Mr. Cade and his brother, who knew appellant well, testified that they saw him on the road coming from the direction of the place where the killing took place, at about 5:30 o'clock on the afternoon of the day of the killing, this being the time fixed by one of the newly discovered witnesses as that at which he saw appellant in the town of Rising Star. Mr. R. W. Cade testified that he had been to Rising

Star himself that day and got home about 5:30 p. m., and after he got there appellant drove up, coming from the west, and that he remained there seven or eight minutes. He described the car in which appellant was driving exactly as many of the witnesses described it who saw appellant in the neighborhood of where the killing occurred on the same afternoon. Mr. Cade said it was something like twelve or thirteen miles from where he saw appellant to where the deceased lived. Mr. Clay Cade, brother of preceding witness, testified that he had been to the town of Rising Star on that day with his family, and had taken his brother; that he came back by and let his brother out and went on west toward his place and met a man whom he said was, in his opinion, appellant, coming from the direction of where deceased lived. The point where he met appellant on this occasion was seven or eight miles from where deceased lived. The testimony of appellant's uncle, Hardy Kent, with whom he was staying at the time, and the testimony of Mrs. Hill, to whose place appellant went on the day of the homicide in the car of his uncle, Hardy Kent, furnished evidence which, without setting it out, is extremely strong in indicating appellant as the guilty party.

Appellant cites Seaton v. State, 112 Texas Crim. Rep., 301, 16 S. W. (2d) 823, and Davis v. State, 114 Texas Crim. Rep., 72, 24 S. W. (2d) 417, as supporting the impropriety of admitting expressions of opinion from certain witnesses. The facts of the cases referred to entirely differentiate them from those in the instant case. It would be highly improper to permit any witness to express an opinion as to whether certain things were put under a bed by a left-handed man, as in the Seaton case. We do not think these authorities shed any light upon appellant's objection to testimony that a certain buck shot shell was the same kind of shell as that found at the scene of the homicide.

Appellant renews complaint of the refusal of his special charge No. 2. Said special charge would have been applicable only to certain facts which do not appear in the record; nor is there any bill of exception in the record to the refusal of the testimony to which such charge would have been applicable.

Finding no error in the record, the motion for rehearing will be overruled.

*Overruled.*