### H. R. DeLong v. The State.

No. 15442.   Delivered December 7, 1932.
Reported in 55 S. W. (2d) 107.

The opinion states the case.

*Reynolds M. Gardner,* of Amarillo, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is rape; the punishment, confinement in the penitentiary for ten years.

The indictment charges rape by force, threats, and fraud. Appellant contends that the evidence is insufficient to support the charge.

Prosecutrix, Ruth Beams, who is a young married woman about eighteen years of age, had been living in Yuma, Arizona, with her husband. Prior to the alleged assault, her husband had gone to Waurika, Oklahoma, in search of work. She remained in Yuma. After securing employment in Waurika, prosecutrix's husband, on November 2, 1931, wrote her a letter in which he advised her he had secured work, and requested that she come to him as soon as she could, as he needed her help. At the time she received this letter, prosecutrix had no money. Her friends, Mr. and Mrs. Prate Chesney, and Joe Carlton decided to accompany her from Yuma to Waurika. None of the parties having any money, they traveled on freight trains, hiding in box cars to avoid detection. Reaching Dalhart, they went to a place known as the "jungles." There, while making some coffee, they met three young men, Pat Warren, Hughie Murphy and Lawson Mardis. Prate Chesney agreed to let these young men travel with his party. After dark, prosecutrix and her six companions boarded a freight train going toward Amarillo and entered a compartment of a refrigerator car. Before the train reached Amarillo, appellant and Jack Behr came to the compartment occupied by the parties. According to the version of prosecutrix, when appellant came to the opening in the top of the car he said that his name was "Denver Bob," and ordered all of the parties to come out on top of the car. It appears that the party known as "Denver Bob" was special agent of the railroad; it being the state's theory that appellant impersonated him in order to intimidate prosecutrix and her companions. Pat Warren was the first to obey appellant's command. At the point of a pistol appellant forced him into another refrigerator car and locked him up. Finally appellant required prosecutrix to come on top of the car. Locking the others in the compartment, he forced prosecutrix to accompany him along the top to the other end of the car. At this juncture we quote from the testimony of prosecutrix, as follows: "When he got me to the other end of the car he said he was the 'law'; he said he was 'Denver Bob'; he said he was the 'law' and that he didn't want to cause us any trouble, and if I would have intercourse with him he would let me go, and I asked him if I would have intercourse with him if

he would let my friends go too, and he said 'yes,' and I said 'on your word of honor' and he said 'yes' and I told him I had not been touched since I had gotten married and I wasn't going to do it. He didn't say anything then, but he threw me down on the walk and got my right arm behind me, and his left shoulder on my right shoulder, and he held the gun in his left hand and in my ribs. When the conversation took place both of us were standing up, and the defendant grabbed me and threw me down on the walk of the car, and I had my right hand back under me. I had my right arm behind my back like that (illustrating), and he had his left shoulder on my right shoulder, and he took the gun from his pocket and put it in his left hand, and held it here in my ribs, (illustrating)—in my right side. I could feel the barrel of the gun there in my side. After the defendant had me in that position he took my overalls off of me, down to my ankles. In taking those overalls off some buttons were torn off. I am married and understand what is meant by the term 'intercourse,' and things of that kind. After he had taken my overalls down he had an intercourse with me. During that time the defendant continuously kept that pistol in my side there. The reason I let the defendant, H. R. De-Long, have intercourse with me like I have told about here on that occasion was because I was afraid if I resisted he would shoot me."

Prosecutrix testified further that after appellant had completed the act of intercourse he carried her back to the compartment and forced her to enter; that she immediately told Mrs. Chesney what had happened; that after appellant put her back into the compartment he locked them all in; that at the time she first came out of the car at appellant's command he asked her if she was married, and she replied in the affirmative; that he asked her for proof and she gave him her birth certificate and a letter from her husband, which appellant at no time returned to her. Prosecutrix's companions testified that after appellant returned her to the compartment she was agitated and crying. They said she came down in the car buttoning her overalls. Further, they testified that while in this agitated condition she told them of appellant's conduct toward her. Upon the arrival of the parties in Amarillo, they kicked on the side of the car and were released by a switchman. Shortly thereafter complaint was filed against appellant charging him with the offense of rape. Appellant and Jack Behr were arrested in what is known as the "jungles" in Amarillo. A search of appellant disclosed a birth certificate be-

longing to prosecutrix and a letter written to her by her husband, in which he requested her to come to him at once. These instruments were introduced in evidence upon the trial of the case without objection. Appellant had no pistol on his person at the time he was arrested. Shortly thereafter the officers found near the place, hidden in some woods, a .38 calibre pistol. Neither appellant nor Behr wore a pistol scabbard.

Appellant testified, in substance, as follows: He saw prosecutrix and her companions in the refrigerator car as testified to by them. At the time Jack Behr was with him. Behr had a pistol.; he had none. He asked Behr if he knew where there was an empty refrigerator car, as it was too cold to stay on top of the train. He and Behr went together to the car occupied by prosecutrix and her companions. Behr pulled his pistol and ordered them out. Behr ordered the first one out into another refrigerator car, and locked him in. He (Behr) asked the women if they were married and demanded that they produce the evidence, telling them that he was "Denver Bob." Finally he suggested that he and appellant have sexual intercourse with prosecutrix. He demurred, but finally agreed. When prosecutrix came out of the car, Behr asked him if he wanted to have the first act, and he replied it did not make any difference. Prosecutrix said that she would let them have intercourse with her if they would let her "gang by." He and prosecutrix went to the other end of the car and had sexual intercourse, she lying down on the car and willingly submitting to the act. She removed one leg of her overalls in order to accommodate her person to him. He did not have a gun and used no force or threats in accomplishing the act. After they had completed the act, prosecutrix got up and went back to the compartment occupied by her companions. On the way back she told him if he did not give her twenty-five dollars she was going to "turn him in." Behr did not have an act of intercourse with her. After she had gotten back into the compartment of the refrigerator car, Behr, over his protest, locked the parties in. The pistol found by the officers in Amarillo did not belong to him, but to Behr. He had never had it in his possession. The birth certificate and letter of prosecutrix had never been in his possession until he had exchanged clothes with Behr in Amarillo. He did not know it was in the shirt he had gotten from Behr at the time the officers arrested him. The officers assaulted and abused him in an effort to force him to confess, but he refused to sign a confession.

In his application for a continuance, appellant alleged that

one Bill Roberts was on the train with him and that he would swear that appellant did not have a gun on the occasion in question and that the act of intercourse appellant had with prosecutrix was with her consent; no force or threats being used by appellant. Appellant, upon cross-examination, testified that there was no man by the name of Roberts on the train on the occasion in question, and stated that he did not know at the time he signed and swore to the application that his counsel had alleged therein that one Roberts was on the train and would give the testimony set forth in the application. In short, he admitted that the averments relative to the witness Roberts were false.

Except as to the act of intercourse, prosecutrix's companions corroborated her testimony in its entirety. At that time they were locked in the compartment of the refrigerator car. Considering the corroborative testimony, appellant's own version of the transaction, the false statement embraced in the application for continuance, the possession by appellant at the time of his arrest of the birth certificate and letter belonging to prosecutrix, and the finding of the pistol in some weeds at the place of appellant's arrest, the jury accepted prosecutrix's version of the transaction as true. Under the circumstances, we are unable to reach the conclusion that the verdict should be disturbed.

In his brief, appellant urges that the state failed to prove venue. Article 847, C. C. P., requires this court to presume that venue was proven unless a bill of exception appears in the record showing that an issue was made upon that point in the trial court. Green v. State, 116 Texas Crim. Rep., 2, 32 S. W. (2d) 650; Guidry v. State, 116 Texas Crim. Rep., 294, 31 S. W. (2d) 633; Berry v. State, 111 Texas Crim. Rep., 611, 13 S. W. (2d) 697; Lawrence v. State, 117 Texas Crim. Rep., 228, 36 S. W. (2d) 1018; Brady v. State, 108 Texas Crim. Rep., 606, 2 S. W. (2d) 261. We find in the record a bill of exception embracing appellant's motion for a new trial. This motion contains several paragraphs. In one paragraph it is alleged that venue was not proven. This is not sufficient to authorize this court to review the question. In Lawrence v. State, supra, it was said that, unless the issue of venue was raised prior to the filing of the motion for a new trial, the presumption in favor of proof of venue will be indulged. In any event, an examination of the statement of facts convinces us that it was sufficiently proven that the offense occurred in Potter county, as alleged in the indictment.

Appellant filed a motion for a new trial, which he neither signed nor swore to. In this motion he alleged that he had discovered new evidence since his trial. Attached to the motion is the affidavit of one Ted Daniels, in which it is averred that he had talked to prosecutrix several times after the alleged commission of the offense and that she had stated to him that the reason she allowed appellant to have sexual intercourse with her was because she understood him to be "Denver Bob," an official of the Denver Railroad, and that he had told her that, if she would permit an act of intercourse, he would let her and her companions go on to Amarillo unmolested. It is alleged in the affidavit that he told appellant's attorney of the conversation a day or two after the case was tried. It is unnecessary to discuss the materiality of the testimony alleged to have been newly discovered, or to determine whether the fact that such testimony is merely impeaching in character would have warranted the overruling of the motion. The court does not appear to have heard evidence on the motion for a new trial. No affidavit on the part of appellant's counsel showing when he learned of the new testimony and the efforts he used to obtain it before the trial is attached; nor was it shown that appellant used diligence. In short, the record fails to show the use of any diligence on the part of either appellant or his counsel. It is the rule that the accused must satisfy the court that the new testimony has come to his knowledge since the trial, and that it was not owing to the want of due diligence that it was not discovered sooner. Branch's Annotated Penal Code, sec. 198; Dansby v. State (Texas Crim. App.), 53 S. W., 105; Kent v. State, 121 Texas Crim. Rep., 396, 50 S. W. (2d) 817.

It appears from bill of exception No. 2 that a juror testified on the motion for a new trial that it was generally discussed by the jury that prosecutrix and her companions would have smothered in the refrigerator car had they not been released in Amarillo by a switchman. Further, this juror testified that the fact that the parties would have smothered was largely responsible for his action in voting to convict, as otherwise he did not believe he would have convicted. It was in evidence that the compartment was not ventilated, and that if the parties had not been released, they would have smothered. This fact the jury were warranted in discussing. It was not permissible to impeach the verdict of the jury by testimony of jurors showing what use was made of testimony legally before them. Such an inquiry is not within the scope of the statute

on misconduct of the jury. Sims v. State, 96 Texas Crim. Rep., 519, 258 S. W., 165.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.