## SAM CRUSE V. THE STATE.

No. 16054.   Delivered November 1, 1933.
Rehearing Denied December 20, 1933.
Application for Leave to File Second Motion for Rehearing
Denied January 10, 1934.
Reported in 66 S. W. (2d) 324.

The opinion states the case.

*A. L. Lewis,* of Houston, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE. — Conviction for murder; punishment, ten years in the penitentiary.

Appellant shot and killed a man named Sharp in Houston, Texas, about midnight on September 3, 1932. On this trial he claimed that he shot in self-defense against a hip-pocket movement on the part of Sharp. No pistol or weapon of any kind was found around the body of Sharp, or on his person after he was shot.

The state relied chiefly on the testimony of Jack Woods, who swore that he was present and saw the shooting, and that deceased made no hip-pocket movement within the knowledge of witness; that no one was in the hall where the shooting took place save himself, Sharp and appellant; that a Mrs. Bullington, who had become the wife of appellant since the shooting, was in a car out in front of the house; that Miss Sanders had gone out of the building toward the car; that witness came downstairs, stepped into the hall where appellant and deceased were talking. He said he advanced to a point near Sharp when appellant pulled a pistol and shot twice at deceased Sharp, who was doing nothing. Witness assisted Sharp to a nearby room, then went out and got in the car with appellant and the two women and drove a short distance with them. He said he did not know how seriously Sharp was hurt. He further testified that appellant asked him to not tell who did it and witness agreed to this. He got out of the car and went back to the place of the shooting, and later got help for Sharp, who was carried to a hospital. On the way from Houston to Cleveland, after the shooting, appellant threw his pistol in a river. Other fact phases of the case will be discussed in connection with the legal questions presented.

There are two bills of exception, one complaining of the

refusal of a special charge seeking to have the jury told that if appellant was so under the influence of intoxicating liquor as to render him incapable of knowing right from wrong, or of exercising the cool and calm judgment of a normal person, the jury might consider this in mitigation "of the offense with which he is charged." In his qualification to this bill of exception the trial judge certifies that there was no testimony before him supporting the theory that appellant was intoxicated when he fired the fatal shot. We accept such statement as true in the absence of any exception noted thereto.

The other bill of exceptions complains of the refusal of a new trial, sought because of the newly discovered testimony of one T. M. Jordan whose affidavit is attached to the motion for new trial. In same Jordan swore that he lived at Gladewater, Texas, and knows appellant; that he happened to be in Houston on the night of September 3rd, and wanted some whisky, and consulted a man named Toops who got in the car with him and drove him to 618 Jefferson Street (the scene of this shooting); when they got there a woman was in front of the house trying to crank a car, and Toops went directly to help her crank the car; that affiant started to the house, and as he walked on the porch he saw two men in the house talking, one of them being appellant. He said the other man seemed angry and talked loud, and said to appellant, "You can't come to this house and run women off as long as I am here." He further said that appellant tried to explain to the man that the women came with him and he intended to take them away, but the other man said, "I ought to shoot your damned head off, and I'll do it"; that the man reached into his hip-pocket as if to draw a gun, and he heard two pistol shots; that the other man turned and started into an adjoining room to this hall, and about this time another man came downstairs and walked to the man who had been shot. Jordan said in his affidavit that he turned and started away and bumped into a woman coming up on the porch; that he told no one of what he had seen until a short time before this trial when he met a man in Dallas named Waugh, who told affiant he lived in Houston, whereupon he said he told Waugh of seeing this shooting, and asked what had become of the case, and was told that it was set for trial the coming Monday. Affiant said as soon as he could "get his affairs in shape" he came to Houston to tell appellant or his counsel what he had seen; that he got to Houston about 11 P. M. Monday night but could not learn of the whereabouts of appellant or his lawyers; that he came to the court house about 11 or 11:30 the next morning and found that the jury

were out in the trial of said case; that he then informed appellant and his attorneys of what he knew. This affidavit was sworn to before a notary in Houston on November 15, 1932. In his sworn motion for new trial appellant set out that this was not known to him or his counsel until Wednesday, September 16, 1932, at about ten o'clock. We might comment on this disagreement as to dates but do not deem it material in view of our disposition of the case. Further in said affidavit Jordan set out that he came to Houston with Don LaRoe, an oil man of Terrell, Texas, and after reaching Houston he talked with a Mr. Benson, a drilling contractor, head of the D. & R. Drilling Company of Houston.

The motion was controverted by the state as to the diligence, the truth of the matters stated in the affidavit, and as to the probable effect of same if before the jury. The state averred that after this affidavit was made it tried to find Jordan, had subpoena issued for him, and had discovered that he was a transient person whose last known stopping place was in Beaumont, and that they had been unable to find him. Also, that it had made diligent search for a nam named Toops in Houston and had found no such man, but had found three men named Toups, and that an affidavit from each of these was attached to the controversion and presented to the court during the hearing, in which each affiant swore that no such transaction took place between him and Jordan as that sworn to by Jordan. The state further denied the residence in Houston of any man named Waugh, and set out its efforts through various officers to locate such person; also denied that there was any such person in Houston as Mr. Benson, or any such concern as the D. & R. Drilling Company.

On the hearing of the motion for new trial the court heard these affidavits supplemented by oral testimony. A Mr. Downer swore he was at 618 Jefferson Street the night of the shooting, part of the time with appellant's party; that he left the house a few minutes before the shooting, leaving appellant, Jack Woods and Miss Sanders in the house, and that there was but one car in front of said house at the time, this being the car occupied by Mrs. Bullington. Mr. Woods and Miss Sanders were put on the stand upon the hearing and each swore in substance that Jordan was not present at the time of the shooting. Miss Sanders said she was on the porch just before the shooting but no man bumped into her, and that no car came up, and no one helped or offered to help Mrs. Bullington crank her car. The state called attention to the fact that on the trial of the case Mrs. Bullington, now Mrs. Cruse, the wife of appel-

land, testified as a defense witness, and that she made no mention whatever of seeing any man or car out in front of the house at the time of the shooting, and did not affirm that any person came to help her crank her car, or that she saw any such man as Jordan on the porch or around the place at the time of the shooting. Appellant offered nothing in rebuttal of the state's testimony heard upon the hearing of the motion for new trial.

The court below filed his carefully prepared order overruling the motion, in which he found as a fact that if Jordan was at the scene of the shooting, as he claimed, then neither appellant's motion nor its supporting affidavits, nor the testimony before the court upon the hearing of the motion for new trial, showed that appellant could not have known of the presence of Jordan by the exercise of reasonable or ordinary diligence. The court further found as a fact that if Jordan was present in the court room at any time during the trial, that he was so present long before the arguments were concluded, and at a time when his testimony would have been admitted. He also found that appellant and his counsel knew of Jordan's supposed testimony before the jury arrived at any verdict, and that no motion was made for postponement or a continuance. It does not appear that after learning of Jordan's claimed presence and testimony, appellant and his counsel in any way prior to the conclusion of the trial made any effort to get said testimony before the jury, or made same known to the trial court. Further, the court below finds that in view of all the testimony in the case, it is his belief that had the testimony of Jordan been before the jury, it would not have affected a different result.

We have not discussed the motion insofar as it relates to one McIlvain for the reason that we do not deem the contention relating to such person serious enough to call for discussion. We are not favored with a brief on behalf of appellant.

While our statute provides in subdivision 6 of article 753, C. C. P., for the granting of a new trial when new testimony material to the accused has been discovered since the trial, it is observed that the cases uniformly require that a strict showing be made that the evidence be in fact new,—both to the accused and his attorney; it also seems that much weight is given to the action of the trial court in passing upon questions raised in this connection. When said court has a doubt as to the diligence, or its materiality, etc., a new trial might be properly refused. Bronson v. State, 2 Texas App., 46; Burton v. State, 33 Texas Crim. Rep., 138; Lovel v. State, 93 Texas Crim. Rep., 615; Anderson v. State, 93 Texas Crim. Rep., 634; Behrens v.

State, 99 Texas Crim. Rep., 56; Ross v. State, 98 Texas Crim. Rep., 567; Bank v. State, 95 Texas Crim. Rep., 384; Jackson v. State, 115 Texas Crim. Rep., 408; Kent v. State, 50 S. W. (2d) 817; Escobar v. State, 51 S. W. (2d) 346; Daniel v. State, 57 S. W. (2d) 101; Tristan v. State, 58 S. W. (2d) 84. We think the trial judge within his discretion in concluding from the facts before him that no diligence was shown, in that no sort of investigation was made to find out who, if any, were the parties claimed by appellant to have driven up to the house, one of whom went to the assistance of Mrs. Bullington and the other stepped up on the porch and claimed to have seen the shooting, all of which is claimed to have occurred a moment before the shooting. Likewise, it being admitted by the defense that the newly discovered witness Jordan told appellant and his counsel while the jury were out and before the conclusion of the trial, what he claimed to know, and it appearing that our statute authorizes a postponement or continuance of a case during the trial for unforeseen occurrences, that reasonable or ordinary diligence would have required that some effort be made at once to secure either a postponement or a continuance, or at least appellant should have in some way tried to put before the jury that which Jordan claims to have thus unexpectedly brought to the attention and knowledge of appellant and his attorney. As far as this record shows, they did nothing,—made no sort of effort, and took no steps to then in anywise halt the proceedings or to get the testimony before the jury. In Landry v. State, 96 Texas Crim. Rep., 350, we said: "One who seeks to claim surprise by reason of some unexpected happening during the trial of the case which he could not have forseseen by the use of reasonable diligence, and from which it appears he is likely to suffer serious injury to his rights, must avail himself promptly of any right to then seek a postponement of the case or a withdrawal of his announcement."

We would be further inclined to support the court's finding if in anyway based on his belief that under the facts of this case the testimony of Jordan would not likely have produced a different result even if put before the jury. We deem it unnecessary to state the facts of the case further. They seem to justify the conclusion reached by the jury.

The judgment will be affirmed.

*Affirmed.*

## ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—In his motion for rehearing counsel for the appellant renews his contention that the failure

of the trial court to instruct the jury on the subject of temporary insanity as a result of the recent and immoderate use of intoxicating liquor as a mitigating circumstance as is authorized by article 36, P. C., 1925, was erroneous.

It appears from Bill of Exception No. 1 that the appellant requested the court to instruct the jury that if from the evidence they believed that the appellant "was under the influence of intoxicating liquor and that such condition was of such intensity as to render the defendant incapable of discerning right from wrong, or of exercising the cool and calm judgment of a normal person," that they may consider same in mitigation of the offense. The court declined to give the instruction and appellant took a bill of exception which the court qualified with the following statement: "There was no testimony on the trial that the defendant was drunk or at all intoxicated; no such evidence was given by the defendant himself when he testified as a witness in his own behalf; the only testimony offered on this line simply showed some few drinks of whisky were taken by the defendant; I think the record of the testimony will disclose he took two drinks and no evidence was offered by the defendant and no testimony showed or tended to show that he was drunk or intoxicated; in fact it is my recollection such words were not used at all, much less that he was temporarily insane from the recent use of intoxicating liquor or spirits; just no such evidence in the record."

No exception to the qualifying statement of the judge presiding at the trial appears to be attached to the bill. Ordinarily, in matters of procedure, the unchallenged qualification of a bill of exception is conclusive against the person complaining of the bill. See Tex. Jur., vol. 4, p. 102, sec. 67. Where the qualification goes to the question as to whether there was any evidence or sufficient evidence to raise an issue of fact, it cannot have the effect of depriving the appellate court of the right to determine by an examination of the statement of facts the presence or cogency of the evidence and its adequacy of raising the issue with reference to a particular question.

The following summarizes the statement of facts, which we have carefully read: The appellant gave testimony in his own behalf from which it appears that he and two ladies went in an automobile to the house conducted by the deceased; that both before and after partaking of a "Dutch lunch" the parties took a drink; that, after taking a ride of about two hours, they returned to the house and soon thereafter arranged to go to their homes. They had not met the deceased before but were accosted by him with the statement: "I ought to crack your

head for you. * * * You think you are going to come out here and run the women folks off."

The appellant said: "There is not but two women here and I brought them. They want to go home, and I am going to take them."

Deceased replied: "No, you are not going anywhere. I am going to crack your head for you; that is what I am going to do."

Appellant then said: "Why don't you try it?"

The deceased made a demonstration which impressed the appellant that his life was in danger. He shot one time and wounded the deceased from which, according to the testimony, the deceased died. On cross-examination it was shown that the appellant had been drinking a little that night. By other witnesses it was shown that the appellant had been drinking some liquor. Neither the appellant nor any of the witnesses stated that he was drunk or that he was sufficiently intoxicated to suggest temporary insanity. The controlling statute upon the subject is article 36, P. C., 1925, which reads as follows: "Neither intoxication nor temporary insanity of mind produced by the voluntary recent use of ardent spirits shall constitute any excuse for the commission of crime. Evidence of temporary insanity produced by such use of ardent spirits may be introduced by the defendant in mitigation of the penalty attached to the offense for which he is being tried. When temporary insanity is relied upon as a defense and the evidence tends to show that such insanity was brought about by the immoderate use of intoxicating liquor, the judge shall charge the jury in accordance with the provisions of this article."

The law presumes every man to be sane and that presumption will prevail in the absence of evidence overcoming it. In the case of King v. State, 9 Texas App., 515, it was said:

"Naturally, and in fact, the burden to rebut this presumption rests with and is upon the defendant; and he should be able to show his insanity clearly, and to that extent that the minds and consciences of the jury can say, that on account of his insanity he was guiltless of entertaining the criminal intent essential to responsibility for the crime charged." See Smith v. State, 31 Texas Crim. Rep., 14; Tex. Jur., vol. 12, p. 292, sec. 56.

That evidence merely showing intoxication is not sufficient has been repeatedly declared. From Tex. Jur., vol. 12, p. 298, sec. 56, the following is quoted:

"Mere intoxication will not mitigate the penalty for crime, but to have that effect it must have reached the point of tem-

porary insanity, which is that degree of insanity that deprives a person of the capacity and power to distinguish between right and wrong as to the particular act charged against him."

The evidence introduced is not regarded as supporting the defensive theory advanced by the appellant. We are therefore constrained to overrule the motion for rehearing, and it is so ordered.

*Overruled.*