GUILLERMO EVERETT V. STATE.

No. 24141. November 10, 1948.
Rehearing Denied February 23, 1949.

*Alaniz & Norris,* Alice, and *Sneed & Vine,* and *Louis Scott Wilkereson,* Austin, for appellant.

*Ernest S. Goens,* State's Attorneye, Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the state penitentiary for a term of 20 years.

The record reveals the following facts: About a week or ten days prior to the killing of Rudolfo Munoz, Ernesto Everett and Frederico Munoz became involved in a difficulty which resulted in serious wounds being inflicted upon the person of Ernesto. This created some ill feeling between the families. A complaint was filed against Frederico Munoz and his father, Rudolfo. On the day of the killing, they were arrested and charged with an assault to murder based upon the prior difficulty. A bail bond was prepared for them and they were permitted to go at large in search of sureties. While they were on the sidewalk in front of a drug store in the town of San Diego, appellant and his brother, Adan, drove up in a car and parked it at a corner just across the street from where Frederico, his father Rudolfo, and grandfather Santiago Munoz were standing. Appellant and his brother, Adan, learned that Frederico and Rudolfo were not in jail, and evidently were displeased about it, according to the state's evidence. As soon as they had parked their car, appellant got out of the car and immediately started to walk to where the Munozes were standing with his brother, Adan, following close behind with a pistol in hand. The state's evidence is that when appellant arrived at the place where Frederico was he began to strike Frederico and this precipitated a fight. During the encounter, they clinched and tussled down the sidewalk. While this struggle was in progress, Adan shot Rudolfo who fell just inside of the drug store and died almost instantly from the effects of the shots. All shots, some three or four, were fired by Adan, brother of appellant, and some of the shots struck the grandfather Santiago Munoz.

Under the facts here related, the court in his charge instructed the jury on the law of murder with and without malice, on the law of principals, on self-defense, and an instruction on the law of suspension of sentence. No objections were urged to the court's charge. The only question presented to this court for review relates to the court's action in overruling his motion for a new trial based on what he claims to be newly discovered evidence; in this, that some of the state's witnesses

testified that the deceased was shot twice—once in the left breast and once in the back above the hip—that a few days after the trial, appellant's father went to see the undertaker at Alice who had prepared the body for burial and learned from him for the first time that the deceased had but one bullet wound on his body, at least he did not find but one.

No reason is assigned why the appellant's father or his attorney failed to interview the undertaker prior to the conclusion of the trial. The killing took place on the 22nd day of August, 1947; a preliminary hearing was had and the grand jury returned an indictment against him in the early part of October, 1947, charging him with the offense. The record fails to show any diligence to discover the alleged newly discovered evidence prior to the trial. The record affirmatively shows that the undertaker was available; he lived only about ten miles from the court house. One accused of crime will not be permitted to remain idle until after he is tried and convicted and then seek a new trial on the ground of newly discovered evidence which could have been discovered before the trial by the exercise of ordinary diligence. See Loyd v. State, 105 Tex. Cr. R. 91 (286 S. W. 1096); McVerse v. State, 103 Tex. Cr. R. 140 (280 S. W. 583); Holmes v. State, 106 Tex. Cr. R. 515; Jackson v. State, 115 Tex. Cr. R. 408 (28 S. W. 2d 546); Arnold v. State, 115 Tex. Cr. R. 189 (29 S. W. 2d 762); Harris v. State, 117 Tex. Cr. R. 201 (35 S. W. 2d 1046); DeLong v. State, 122 Tex. Cr. R. 290 (55 S. W. 2d 107); and Daniel v. State, 123 Tex. Cr. R. 5 (57 S. W. 2d 101).

No reversible error appearing from the record, the judgment of the trial court is affirmed.

Opinion approved by the Court.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

It is insisted by appellant in his motion that the testimony herein is not sufficient to predicate a verdict of guilt upon his part as a principal in this homicide.

The testimony does show that appellant's brothers had engaged in one or more difficulties with the Munoz family a short time prior to this killing; that one of appellant's brothers had been seriously injured; that there was filed in the court at San Diego certain cases against members of the Munoz family; that

they had been allowed bond thereon and had been permitted to take these blank bonds away from the court house to obtain signatures thereon; that appellant, on the morning of the killing, had seen these members of the Munoz family on the street; that appellant and his brother, Adan, went to the courthouse, each in his separate car; that they finally inquired of an officer why the Munoz people were not in jail, whereupon they were informed that they had been given their bonds to make and would be placed under bond. This displeased appellant, and he and his brother, Adan, then left the courthouse in appellant's car. As they were driving by a drug store in San Diego, they saw the deceased, his son (Frederico) and the old man Santiago Munoz (the grandfather) standing on or near the sidewalk. Appellant stopped his car and got out of it, and his brother, Adan, got out on the other side at about the same time, Adan, having possessed himself of appellant's pistol which was carried in the glove compartment of appellant's car. Appellant immediately began fighting Frederico Munoz, and Adan shot the deceased, killing him. He also shot the 78-year-old grandfather in the back. The grandfather was one-eyed and walked with a cane. Appellant was still engaged in fighting Frederico when Adan turned toward this fight and Adan "asked Willie (Guillermo) if he should kill me (Frederico Munoz). Willie did not make any reply. * * * As to what I did to prevent it, I would dodge over by Willie when he would point his pistol at me. I mean that I would keep Willie between me and him." The pistol with which the killing was accomplished belonged to appellant, and he had kept it in his car for about a week. He testified that his brother, Adan, knew nothing about the pistol being in appellant's car. The two brothers (appellant and Adan) made the inquiry together about the Munozes being out on bond. Appellant was displeased. He and Adan came to the courthouse in different cars but left in appellant's car; they drove by the drug store where the Munozes were standing and parked their car, and when the two Everett brothers got out of the car and started towards the drug store, Adan had appellant's pistol in his hand. After Adan had shot the two Munoz men, although the courthouse was within a few blocks, these two Everett brothers got in appellant's car and drove ten miles to Alice in another county, where they surrendered to the officers.

An agreement of parties to act together in a common design can seldom be proven by words, but reliance can often be had on the actions of the parties showing an understanding and common design to do a certain act. "Participation in the enterprise may be inferred by circumstances; it need not be shown by direct evidence." 12 Tex. Jur. pp. 349-350, secs. 84-85. Any

person who advises or agrees to the commission of an offense and who is present when it is committed is a principal, whether he aids in its commission or not. The mere fact of presence is not sufficient, however, but same is a circumstance tending to prove that a person is a principal, and taken with other facts, may be sufficient to show that he was a participant. It is not necessary that the common design be formed by all parties to kill that the doctrine of principals would apply.

In the case of Kirby v. State, 23 Tex. App. 13, the court quoted from 1 Bishop Crim. Law, 7th Ed., sec. 636, as follows:

"When, therefore, persons combine to do an *unlawful thing*, if the act of one proceeding according to the common plan, terminates in a criminal result, though not the particular result meant, all are liable."

And, again, idem, page 26, we quote:

"In Mercersmith's case, 8 Texas Court of Appeals, supra, it was said: Where two persons go out for the common purpose of robbing a third person, and one of them, in pursuit of such common purpose, kill such third person, under such circumstances as to make it murder in him who does the act, then it is murder in the other. * * * Nor is it necessary that a common guilty purpose of resisting to the death any person who should endeavor to apprehend them must have been formed when the parties went out with the common design of committing the unlawful act, to render all principals in a murder by one of them while making such resistance."

See Rodriquez v. State, 145 Tex. Cr. R. 152, 166 S. W. (2d) 710; Scott v. State, 190 S. W. (2d) 828, 149 Tex. Cr. R. 4.

Under the circumstances here shown, it is apparent that the jury could infer that these two Everett Brothers were displeased because their prior antagonists were not in jail; that they left the courthouse in the same car, Adan's car being left there; that they were looking for the Munozes; that they found them at the drug store; that they got out of appellant's car for the purpose of fighting; that appellant started the fight, closely followed by his brother, who shot two of their antagonists, and Adan then asked appellant whether he wanted him to shoot a third one. This shooting was done with appellant's pistol, evidently taken from the car and which he said his brother did not know was in the car. We think appellant was shown by the circumstances to have been a principal, and as such, he was guilty

of whatever acts that his brother Adan did in furtherance of their common unlawful design.

The motion for a rehearing will therefore be overruled.